R. B. MacDONALD AND A. P. MacDONALD, PLAINTIFFS AND RESPONDENTS, v. THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF MONTANA, AND THE DIOCESE OF MONTANA, A CORPORATION, DEFENDANTS AND APPELLANTS.

No. 11189.
Submitted October 18, 1967. Decided December 15, 1967.
435 P.2d 369.

Murphy, Robinson & Heckathorn, I. James Heckathorn (argued), Kalispell, Worden, Worden, Thane & Robb, Donovan Worden, Jr. (argued), Missoula, for appellants.

J. A. Turnage (argued), Charles B. McNeil (argued), Polson, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by defendants from a verdict and judgment for the plaintiffs in an action to recover damages allegedly caused by the negligence of the defendants.

The plaintiffs alleged that the defendants' negligence was the proximate cause of a fire which damaged their property, Wild Horse Island. The negligence alleged is the failure to properly supervise two boys who were staying at a church camp operated by the defendants. One of the boys allegedly started the fire.

The two boys, Bernard Hanson, age 17, and Dwight McKay, age 16, stayed at Camp Marshall, a camp operated by appellants during the summer of 1963. The camp operated eight different encampments during that summer. Six of these were for young people and two for families. Hanson was supposedly employed as the camp handyman and was to stay at the camp the entire eight sessions. McKay was a counselor for the six groups of young people and he was to leave prior to the final two family encampments. McKay asked and was granted permission to stay for these last two sessions and help Hanson. Both boys were given room, board and transportation to and from the camp. In addition, Hanson was paid $100 at the end of the summer. Those attending the camp during the various encampments had to pay to do so.

The day of the fire, August 9, 1963, was allegedly the boys'

day off. They told the camp director that they were going over to Wild Horse Island. The camp director had no objection. He believed that the staff members of the camp had been given permission to visit the island by the plaintiff, as indeed at least one had. The boys took a camp boat over to the island. Apparently Hanson stumbled while smoking and started a fire. The boys tried to put it out but it spread too rapidly and they went for help.

This suit is predicated on the theory that the camp personnel knew or should have known that the boys could not be trusted away from the camp by themselves and they negligently failed to properly supervise the boys. The camp director was supposed to have been put on guard against this danger because the boys had been involved in an earlier fire at the area dump.

The only evidence connecting Hanson and McKay with the fire is a letter written by Hanson to the attorney for the plaintiffs. In it he admits he started the fire accidentally. Defendants claim the letter is hearsay and should not have been admitted. Plaintiffs contend the letter is a declaration against interest and thus is within that exception to the rule against hearsay evidence.

A declaration against interest is a hearsay statement which is made by a person who is neither a party to the action nor in privity with a party. (2 Jones on Evidence, 5th ed. § 295.) The declaration against interest must meet two requirements to be admissible. The first is that the declarant is unavailable to testify. (4 Wigmore, 3d ed. § 1456.) The second is that the statement is against the proprietary or pecuniary interests of the declarant and thus is probably true even though oath and cross examination are absent since it is not natural to make untrue statements against those interests. (Id., § 1457.) As to the first requirement, although many jurisdictions allow other causes of unavailability (29 Am.Jur.2d, Evidence, § 618), Montana only admits the declaration when

the declarant is dead. R.C.M.1947, § 93-401-27, subd. 4; Wilson v. Davis, 110 Mont. 356, 103 P.2d 149 (1940); McReynolds v. McReynolds, 147 Mont. 476, 481, 414 P.2d 531 (1966). Consequently the letter should not have been admitted.

Defendants claim the district court erred in not granting their motions for dismissal and a directed verdict. The basis for this claim is the theory that when the evidence is viewed in the light most favorable to the plaintiff and it does not support a verdict for him the case should be dismissed.

Rule 41(b), M.R.Civ.P., provides that the defendant may move the court for dismissal at the end of plaintiff's case on the grounds that upon the facts and the law plaintiff has shown no right to relief. This court will not overturn the judgment of the district court as long as it is supported by substantial evidence. Teesdale v. Anschutz Drilling Company, 138 Mont. 427, 357 P.2d 4 (1960); Rozan v. Rosen, 150 Mont. 431 P.2d 870. In ruling on the motions for dismissal and a directed verdict, the court must view the evidence in the light most favorable to the plaintiff and if a prima facie case is made out the motion should not be granted. The motion should be granted if it follows as a matter of law that recovery cannot be had upon any view of the evidence, including legitimate inferences to be drawn from it. Castle v. Thisted, 139 Mont. 328, 363 P.2d 724 (1961) and cases cited therein. If there is no evidence of any negligent act or omission of duty by the defendant to support a verdict for the plaintiff the motion should be granted. Jackson v. William Dingwall Co., 145 Mont. 127, 399 P.2d 236 (1965).

While we have heretofore discussed the error in the admission of the letter stating the cause of the fire, we must now look to the balance of the case in order to determine if, applying the previously quoted rules to this case and viewing the evidence in the light most favorable to the plaintiffs, there is substantial evidence, or any evidence, of a negligent act or omission of duty on the part of defendants?

The gravamen of the complaint is that the boys were prone to vandalism or negligent acts or at the very least could not be trusted, and that the camp supervisors should have known this and taken proper precautions; that a reasonable man would supposedly not have let these two boys leave camp by themselves.

There is no question about the veracity of the witnesses testifying about the two boys. The undisputed facts are these. The boys were attending the camp in some capacity other than that of the other youths who only stayed a week at a time. McKay had supervisory duties over the temporary campers during the first six encampments. Both boys were given duties and responsibilities. Hanson was given one day off from his duties each week.

The boys caused the fire at the dump area. Their explanation was that they thought paper trash was to be burned. There is no evidence in the record that anyone thought the fire was started for any other reason. There were no signs prohibiting burning at the dump. After being told that burning was prohibited there were no more fires at the dump.

For the verdict and judgment to be upheld the evidence must support a finding that the camp personnel had breached their duty of proper supervision. The fact of the one fire is not enough to give rise to an inference of a propensity to start fires or to do any other acts of negligence or vandalism. That such might be true would be merely conjecture for there was no other showing of any negligent acts, vandalism, incompetence or any other reason not to trust the boys away from camp by themselves. The prior fire is the only evidence tending to show a wrongdoing and there was no showing that this was anything but a natural mistake. The mere fact of the accident is not evidence of negligence. There is no substantial evidence to show that the camp personnel should have known that they should have supervised these boys more closely. The plaintiffs have not established by any-

thing other than conjecture that a reasonable man would not have let these boys leave the camp by themselves.

Neither can it be claimed that it was negligent for the camp director to give them permission to go to the island. The plaintiff R. B. MacDonald testified:

"Q. Actually, the public generally uses Wild Horse Island? A. With the reservation of all groups that are, there's no smoking except in designated areas which we don't have and no camp fires and no hunting.

"Q. However, there are groups—the public generally come over singly and in pairs and wander about the island and you don't know they are there a lot of times? A. This is true. The island is posted around the whole nine miles about every half mile or so with the signs, but we do have people come on the island without our knowledge.

"Q. Would you deny that you had given Mr. Theis or had talked to him and told him that you had no objection to people from the Camp Marshall to come over and explore the island? A. I would add only—would not deny, but I would add that a man from St. Louis and his wife, we invited back at their convenience. If he is Mr. Theis or not, I don't know.

"Q. I rather think that it is, but I don't know either. I assume, because he is from there. A. He wanted to come back. As I recall, he had a camera, or something, and we invited him and his wife back. She and my wife became friends in a little visit and we invited him back to take pictures of the animal life and come back any time that they could.

"Q. Do you think it would have been possible that you told him that other employees of the camp could come over if they wished? A. I don't recall, sir.

"Q. Would you deny that you had? A. I just don't remember it. I remember inviting him back very specifically. I would think that perhaps he could have interpreted [it] to include other people. My impression, as I recall it, and I remember inviting him back and his wife. Now, if he interpreted

it to be other people, this might have been a misunderstanding between us, and I may have said that. I do know I invited him and his wife back, and I think they had a little boy or something or two little children or something. Father would know. And I invited them back."

From the plaintiff's own testimony it is clear that permission may have been inferred even if it was not given. If so, was the person invited negligent for inferring permission? We cannot tell. There is no evidence to show it was negligent to infer permission from plaintiff's statements. Plaintiff had the burden of proof on that issue. Were he to rely on the giving of permission as the negligent act he would have to show that the camp director and other personnel should have known that there was no permission. There is no evidence on that issue.

The lower court should have granted the motions for dismissal and a directed verdict for there is no showing of negligence on the part of the defendants under any view of the evidence.

Because of the foregoing the remainder of defendants' specifications of error need not be discussed.

The judgment is reversed, and the cause ordered dismissed.

MR. JUSTICES HASWELL, ADAIR and CASTLES concur.

MR. JUSTICE JOHN C. HARRISON did not participate.