No. 12118

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

IN THE MATTER OF THE ESTATE OF ARNOLD
C. SCHUEREN, DECEASED,
-----------------------------------------
ELEANORE A. SCHUEREN,

Plaintiff and Appellant,

-vs-

UNION BANK AND TRUST COMPANY, a Corporation,

Defendant and Respondent.

---

Appeal from:  District Court of the Sixth Judicial District,
Honorable L. C. Gulbrandson, Judge presiding.

Counsel of Record:

For Appellant:

Small, Cummins and Hatch, Helena, Montana
Floyd O. Small argued and Robert Cummins appeared,
Helena, Montana

For Respondent:

Luxan and Murfitt, Helena, Montana
H. J. Luxan and Walter S. Murfitt argued, Helena,
Montana

---

Submitted:  June  18, 1973

Decided: JUL 2 3 1973

Filed: JUL 2 3 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Wesley Castles delivered the Opinion of the Court.

This is an appeal from a judgment for defendant entered on a jury verdict after a motion for new trial was denied. The case was tried in Park County, Hon. L.C. Gulbrandson, presiding.

Plaintiff Eleanore A. Schueren, as beneficiary of the estate of Arnold Schueren, filed a negligence action against defendant Union Bank and Trust Company as executor of the estate of Arnold C. Schueren. The claimed negligence and mismanagement of the executor was that defendant (1) failed to collect assets owned by the decedent on the date of his death January 30, 1967, or in the alternative (2) failed to discover that those assets had been fraudulently disposed of by decedent's agent Leston B. Nay during decedent's lifetime and for failing to present to Nay a claim for the value thereof and to collect thereon.

The Seventh Circuit Court of Appeals described the afore-mentioned agent Leston Nay in its Cause No. 71-1422, 466 F.2d 1035, decided August 1, 1972, in this manner:

> "This is another sad chapter in the case of Leston B. Nay and the frauds he perpetrated over a long period of years against a great number of innocent investors."

We set this forth at this time to set the stage for what follows. Nay murdered his wife and committed suicide on June 3, 1968, leaving many innocent investors to suffer.

Plaintiff-appellant contends the issues in the case were the question of negligence and damages resulting therefrom. We agree.

Appellant sets out some fourteen claimed errors; some are merely the contentions set out above. It is clear the jury believed, as it had a right to do, that defendant was not negligent; and, that in any event no damage resulted because there was no loss of estate property or assets occasioned by actions of the executor. In other words, the alleged value of the estate was simply not there. A substantial part of Schueren's estate had

been embezzled and stolen prior to his death; thus no damage occurred by reason of defendant's activities.

The other claimed errors have to do with the evidence admitted and the instructions given and refused. Before discussing these claimed errors, we set forth the agreed facts.

Arnold C. Schueren during his lifetime was a resident of Chicago, Illinois, engaged in a small manufacturing business in that city. In 1954, Schueren retired from business, sold his interest in the company, and moved to a ranch near Pray, Montana.

In approximately 1936 Schueren became acquainted with Leston B. Nay, also of Chicago, a stock salesman employed by the brokerage firm of Webber, Darch & Company. On April 16, 1936, Schueren made, executed, and delivered to Leston B. Nay a power of attorney which vested Nay with broad discretion and authority to deal with all securities owned by Arnold Schueren including the right to sell and dispose of such securities. A new power of attorney was given by Arnold Schueren to Leston B. Nay on July 7, 1937, and contained the same broad powers.

It was Schueren's policy to leave securities which he had purchased in the possession of Nay and/or the brokerage firm with which Nay was then associated. In 1942, Nay became an employee of the brokerage firm of Ryan-Nichols & Co. During the course of the next several years, Nay acquired all of the stock of Ryan-Nichols & Co. and subsequently changed the name of the brokerage firm to First Securities Company of Chicago. Nay was president of that firm at the time of his death and owned ninety percent of the outstanding stock. The brokerage firms with which Nay was associated were all members of the Midwest Stock Exchange.

Nay, as a long time friend and trusted business associate of Arnold Schueren, retained in his custody almost all securities, whether stocks or bonds, purchased for Schueren's account. The records of First Securities Company of Chicago show that it would purchase securities for Schueren and the stock certificates were delivered to Schueren. Receipts were signed by Schueren acknow-

ledging he had received the certificates. After each transaction, Schueren would deliver the securities to Leston Nay and would receive in return a document entitled "safekeeping receipt."

In sending the income to Schueren, Nay would issue, over the letterhead of First Securities Company of Chicago, typewritten monthly income statements reflecting the amount of dividends and/or interest purportedly received for Schueren's account and remit the amounts shown to Schueren by cashier's checks. Nay purchased the cashier's checks from various Chicago banks. Periodically, upon request of Schueren, Nay would send to Schueren a detailed list of stocks and bonds which were purportedly held by Nay for Schueren's account. The correspondence between Nay and Schueren reveals that at times Schueren, who kept accurate records, would question the inventory statements and/or the income statements.

Arnold Schueren died on January 30, 1967. Thereafter, after due notice and hearing, his will, dated April 1, 1963, was admitted to probate on February 28, 1967 and the Union Bank and Trust Company was appointed executor thereof. Schueren's will provided that all of his property was to be distributed to the Union Bank and Trust Company, as trustee. One-half of his estate after payment of debts, taxes and administrative costs, was to be held in trust for Eleanore Schueren his widow, with income from such one-half to be paid to her monthly. The trustee was given the power to invade the principal of the trust in the event the income was insufficient to provide for Mrs. Schueren's support and maintenance. Mrs. Schueren has the power to dispose of any of the assets remaining in the trust for her benefit to any person whom she desires, upon her death.

The other one-half of Schueren's estate is held in a trust designated the "residuary trust". Mrs. Schueren is to receive all of the income from the residuary trust and the trustee has the authority to disburse from the principal of the residuary trust such sums as may be required to provide for her support, but only in the event that all of the assets of the trust over which

she has a power of appointment have been exhausted. Upon her death, all of the assets in the residuary trust are distributable to the Montana Heart Association.

Following its appointment as executor, Union Bank on March 3, 1967, wrote to Leston B. Nay requesting that all assets owned by Schueren be turned over to it, as executor. The response from Nay was almost immediate and he pledged his cooperation to Union Bank and promised to furnish an inventory of all the securities owned by Arnold Schueren. Nay advised Union Bank it would be necessary to transfer the securities to the name of Union Bank and Trust Company, as executor, and requested twenty-five certified copies of Letters Testamentary to effect the transfers. These documents were mailed to Nay on March 13, 1967. An inventory was received from Nay in the latter part of April 1967, together with valuations of all securities, computed by Nay. The inventory failed to include any stock or bond certificate numbers. At various times from May 13, 1967, through February 8, 1968, Nay requested and was furnished by Union Bank the same documentation and additional documentation including inheritance tax waivers issued by the state of Montana, affidavits of domicile for the state of New York and for the state of California, all purportedly required by the various transfer agents.

In the latter part of February 1968, Union Bank began to investigate the reason for its not having received the securities from Nay. Inquiries were made of its correspondent bank in Chicago, Continental Illinois National Bank of Chicago, and to certain selected transfer agents, and thereafter in May 1968, to all companies and transfer agents in which Arnold Schueren was supposed to hold stocks or bonds. In April 1968, Nay mailed to Union Bank purported copies of letters to all transfer agents showing the request for transfer. After Nay's death, it was established that the original requests had never been mailed to the transfer agents.

- 5 -

While the investigation was in progress, Leston B. Nay on June 3, 1968, murdered his wife and committed suicide. No securities were delivered to Union Bank by First Securities Company or Leston Nay prior to June 3, 1968. Following advice of Nay's suicide, an officer of Union Bank went to Chicago to determine what course of action to take to recover the securities which were purportedly held by First Securities Company for the account of Arnold Schueren. The firm of Pope, Ballard, Shepard & Fowle was employed. Upon learning of the claim of Union Bank as executor of Arnold Schueren's estate, the Securites and Exchange Commission immediately filed an action in the United States District Court of Illinois and a receiver was appointed to take charge of the assets and property of First Securities Company of Chicago. A bank officer appeared at the hearing. That action is entitled "In the District Court of the United States for the Northern District of Illinois, Eastern Division, Securities and Exchange Commission, Plaintiff, vs. First Securities Company of Chicago, Defendant, No. 68C 1053." A special master was appointed by the court to hear the various claims of persons claiming monies and/or securities due from First Securities Company, including the claim of Union Bank as executor of the last will and testament of Arnold Schueren.

Union Bank on April 30, 1968, prior to Nay's death, and as required by law, filed with the Internal Revenue Service at Helena, Montana, a United States Estate Tax Return (Form 706) with respect to Schueren's estate reporting assets of the value of $565,291.20 and concurrently therewith paid inheritance tax in the amount of $17,369.

During the period between March 1967, through April 1968, thirteen remittances by cashier's checks purporting to be remittances of specific dividend and interest income theretofore received by First Securities Company of Chicago with respect to securities held by it for the account of Schueren, accompanied in each instance by a memorandum itemizing the specific dividend and interest income

remitted therewith, aggregating the sum of $20,254.59, were received by Union Bank.

In August 1968, Union Bank filed with the receiver, a petition for reclamation of all securites set forth on the list furnished by Nay in April 1967, and requesting the receiver to turn over all of the listed securities. Union Bank also filed with the receiver a proof of claim claiming the value of all securities appearing on the Nay list.

Petition for removal of the executor and complaint in the instant action was filed on June 16, 1969, by plaintiff-appellant herein. Union Bank, defendant-respondent, filed an inventory and appraisement in this matter on June 25, 1969, showing assets in its possession owned by Arnold Schueren on the date of his death to be: individually owned property - $46,800.04; jointly owned property with Eleanore Schueren - $16,342.14.

On August 19, 1969, Union Bank filed its first interlocutory account and report and petition for settlement thereof. Appellant filed objections to hearing of the account.

On August 14, 1969, an order was entered in the receivership proceedings pending in Chicago, requiring the receiver to turn over to Union Bank, as executor, all of the securities found in the office of First Securities Company of Chicago, which were registered in the name of Arnold C. Schueren. On September 17, 1969, after receipt of the securities, Union Bank filed its first supplemental inventory and appraisement showing the value of the securities received to be $98,399. 44.

On June 30, 1970, the special master appointed by the federal court in Illinois to hear the various claims, after hearing proof on the claim of Union Bank, as executor, recommended the claim be denied upon the grounds that the powers of attorney granted by Schueren to Nay in 1936 and 1937 empowered Nay to dispose of all of the certificates entrusted to him and as such Nay was not acting as an officer or agent of First Securities Company, but was acting as the agent of Schueren. The special master at the same time recommended the claim of Eleanore Schueren be accepted and approved.

On March 22, 1971, the court adopted the recommendations of the special master and entered an order denying the claim of Union Bank, as executor, and approving the claim of Eleanore Schueren.

Subsequent to the filing of the pretrial order in the instant case, the order of the federal district court entered in the Chicago receivership proceedings denying the claim of Union Bank, as executor of Arnold Schueren's estate, was appealed to the United States Court of Appeals, Seventh Circuit. On August 1, 1972, that court reversed the order of the federal district court and allowed the claim of Union Bank, as executor. The decision entitled "Securities and Exchange Commission, Plaintiff v. First Securities Company of Chicago, Defendant; Union Bank & Trust Company, Helena, Montana, Claimant-Appellant, -- Keith S. McKy, Receiver-Appellee, Customer Creditors Committee, Appellee." appears at 466 F.2d 1035.

Union Bank has not filed an estate inheritance tax return with the state of Montana but did, on February 12, 1971 pursuant to the laws of the state of Montana, deposit with the clerk of this Court the amount of $2,537.08 as and for Montana inheritance tax estimated to be due from the estate.

Union Bank, as executor, has disbursed to Eleanore A. Schueren, surviving widow of Arnold Schueren, as and for a widow's allowance, cash sums in the total amount of $62,000.

Leston Nay died testate. No proceedings for the probate of his will or for the administration of his estate have been filed.

During the course of the trial in the district court in the instant case, other facts were developed including generally customs and practices in the securities industry; the proof that no securities (the loss of which is the alleged subject of the suit) existed on January 30, 1967, the date of Schueren's death; a death or suicide note written by Leston Nay documenting his own fraudulent disposition of securities and money entrusted to him; and, certain other matters prior to Schueren's death and subsequent to Nay's death.

- 8 -

The claimed errors,as we have regrouped them, are:

(1)  On the question of negligence, the evidence should have been confined to a period of time from February 28, 1967, (when respondent Union Bank became executor) to June 3, 1968, (when Leston Nay killed himself).

(2)  That the court erred in admitting into evidence the death statement or suicide note of Leston Nay.

(3)  Error in admitting matters in the receivership proceedings in Chicago against First Securities Company in September 1969.

(4)  Error in admitting letters from various transfer agents in January 1970, stating they did not have any record of securities in the name of Arnold Schueren.

(5) Errors claimed in instructions given and refused.

(6)  The actions of the Union Bank in allowing Nay to participate in marshalling the assets made it a guarantor or raised an equitable estoppel against it.

Under claimed error (1), appellant contends no evidence concerning the handling of this estate should have been received which related to any period of time prior to February 28, 1967, or subsequent to June 3, 1968.  This contention does not conform to the conduct of pretrial investigation, the preparation and approval of the pretrial order, or the trial of the case.  The agreed statement of facts as contained in the pretrial order covers the period from 1936 through March 22, 1971, including the commencement of Arnold Schueren's relationship with Leston Nay (1936) through the appointment of Union Bank as executor, its filing of a claim in the receivership proceedings in Chicago, its participation in those proceedings and the filing of the inventory and appraisement and supplement thereto, and petitions for settlement of its account.

In addition, appellant introduced the inventory dated June 25, 1969, and questioned Mr. Mayer, a Union Bank trust officer, with respect to the Chicago proceedings, and Mr. Dion, a Union

Bank trust officer, with respect to the filing of a claim against Nay or First Securities. The happenings after June 3, 1968, were included as a part of the hypothetical question asked of Mr. Finger, appellant's witness. Introduced and received in evidence without objection of appellant's counsel were defendant's Exhibit R (complaint filed in the receivership proceedings by the Securities & Exchange Commission against First Securities Company of Chicago on June 10, 1968); Exhibit S (the affidavit of the senior security investigator on the staff of the Securities & Exchange Commission which was filed with the complaint); Exhibit T (the order of the federal district court appointing Keith D. McKy as receiver); Exhibit U (the petition for reclamation filed on behalf of Union Bank, as executor of the estate of Arnold Schueren); Exhibit V (proof of claim filed by Union Bank, as executor); and Exhibit W (the order of the federal district court requiring the turnover of certain stock certificates to Union Bank, as executor of the estate of Arnold Schueren, relating to certain securities registered in the name of Arnold Schueren). It is clear appellant waived the claimed error. See: Charlie v. Foos, _____Mont._____, 503 P.2d 538, 29 St.Rep. 927.

Appellant complains that respondent Union Bank insisted upon the right to take depositions of various individuals in the Chicago area for use during trial. A great deal of the evidence required by respondent to properly present its case was located in and about the city of Chicago. In addition, each of the transfer agents having the records of the companies in which Arnold Schueren was purportedly a stockholder or bondholder have offices in the midwestern and eastern cities of the United States. Appellant was advised of the nature of the evidence which respondent intended to produce at trial. Appellant was furnished with a copy of the transcript of the hearing of the receivership claims of Eleanore Schueren and Union Bank, as executor, and copies of the proceedings in the Chicago litigation which respondent intended to use at the the trial, all well in advance of the trial. The following

- 10 -

stipulation between counsel appears in the pretrial order:

> "The parties stipulate and agree that all
> pleadings, exhibits and all the testimony
> by deposition or at the hearings before the
> Court or Special Master in the cause entitled
> In the District Court of the United States
> for the Northern District of Illinois, Eastern
> Division, Securities and Exchange Commission,
> plaintiff, vs. First Securities Company of
> Chicago, defendant, No. 68C 1053, may be used
> by either party hereto with like effect as if the
> witnesses were present in Court and testifying."

Appellant reserved all objections save and except as to foundation. There was no suggestion by stipulation or otherwise, nor does the record reveal, that appellant intended to attempt to limit the evidence to the period of time now claimed. It has long been the law of Montana that failure to make timely objection constitutes a waiver. Seder v. Kiewit Sons' Co., 156 Mont. 322, 479 P.2d 448; Charlie v. Foos, supra.

Appellant's contention that the evidence with respect to the financial condition of First Securites or Nay should have been excluded as being immaterial and too remote in time is without merit. The Nay suicide note was admittedly written by Nay before he died on June 3, 1968. The note was written within the time limitation urged by appellant, which should obviate any objection or claimed irregularity with respect thereto. The note is evidence of Nay's deceit of Arnold Schueren, the theft of the securities including the time the thefts commenced (1936) and the method used (sold as collateral for loans), and the effect of this deceit on the financial condition of First Securities. Other documents received in evidence, over objection as being too remote in time and immaterial, were defendant's exhibits G-1, H-1, I-1 and J-1. The first three numbered exhibits are the reports of the special master in the Chicago proceedings regarding the claims of various creditors referred to as "the escrow claimants". The reports were written after hearings at which evidence was taken and the amount due each of the creditors was proved. The total of the claims filed was over $1,300,000, of which approximately $1,000,000 was proved as due. A reading of

the synopsis of the evidence produced at the hearings shows Nay's financial condition as far back as 1953. Defendant's exhibit G-1, wherein the receiver concluded the total claims proved was $972,500, evidence was produced showing Nay had paid as interest for the years 1953 through 1967 the sum of $639,551.24. The special master stated:

> "During the last several years prior to Nay's death, his interest payments to the claimants on the escrow funds became irregular and delinquent."

The evidence is clear that Nay was heavily indebted to third persons and was in fact insolvent long prior to the death of Arnold Schueren and the appointment of Union Bank as executor.

The special master recommended the claims of the "escrow claimants" against First Securities be denied on the ground that Nay was not an agent of First Securities. This recommendation was adopted by the federal district judge whose order was appealed to the Court of Appeals, Seventh Circuit. That court reversed the decision and concluded that Nay in his defalcations was acting as an agent of First Securities and the claims were properly claims against First Securities. Securities & Exchange Commission v. First Securities Company of Chicago --- Olga Hochfelder, et al, Claimants-Appellants, Keith S. McKy, Receiver-Appellee, Customers Creditors Committee, Appellee, 463 F.2d 981, 988.

The statement of facts in the above entitled action outlines the method by which Nay succeeded in duping the claimants into selling legitimate securities, and investing in the so-called "escrow account". Nay acknowledged receipt of cash either by a hand-written receipt or by giving promissory notes to each claimant. Nay made the interest payments due thereon with his own personal checks. Nay deducted these interest payments from his own personal income tax return. In connection with Internal Revenue Service audits in 1956 and 1965, Nay requested and received from each claimant a letter verifying the amount of his indebtedness. From time to time, some of the claimants referred to their escrow investments in correspondence with Nay as being personal loans to

- 12 -

him. Nay was very secretive with respect to the escrow accounts and established, as president of First Securities, an office rule forbidding anyone other than himself to open mail addressed to him or to First Securities marked for his attention. The principal basis for the reversal was the violation by First Securities of the Securities Exchange Act of 1934, and the Rules of Fair Practice of the National Association of Securities Dealers, Inc. The Court of Appeals stated:

> "We have no doubt that the enforcement of Nay's rule regarding the opening of the mail is sufficient without more to constitute a violation of Rule 27. Such violations provide a basis for private damage actions where the rule violated serves to protect the public. [citing cases] First Securities is properly liable for Nay's fraud because of its violation of Rule 27 of the N.A.S.D."

The evidence of the extent of Nay's indebtedness, as reflected in the pleadings, evidence and decisions, which came to light only after Nay's death, was certainly admissible to show his financial condition during the period arbitrarily set by appellant and to further show the inability of either First Securities or Nay to pay to Union Bank the sum of approximately $400,000, the market value of the securities stolen by Nay from Arnold Schueren.

One of the issues raised by the pleadings here was the value of the estate's claim against First Securities or Nay as an "asset" of the estate. To support her allegation that the bank's failure as executor to fully collect the claim resulted in a loss to the estate, it was incumbent upon appellant to prove the financial ability of the debtor to pay the claim. Appellant failed to produce such evidence. Moreover, respondent produced evidence affirmatively showing the debtor did not have the financial ability to pay the claim, had one been presented, and was hopelessly insolvent.

As another "irregularity", appellant states that Union Bank has taken inconsistent positions in the Chicago litigation and in this action. The original complaint requesting the federal court to appoint a receiver was drafted by attorneys for the Securities & Exchange Commission and filed in its behalf and is not an admission by Union Bank that Nay's deceitful and deceptive practices started

after its appointment. It is an allegation only and the proof subsequently developed during those proceedings indicated the deceit had been practiced for over thirty years. In the Chicago proceedings, Union Bank on July 31, 1968, filed its "Petition for Reclamation" requesting the turnover of all Schueren's securities and further requesting all cash proceeds of any of such securities as may have been sold. Thereafter, when the extent of Nay's fraudulent practices had been established and it was certain that the missing securities had long been disposed of, Union Bank in 1968 filed its "Proof of Claim". Union Bank was desirous of obtaining possession of such existing securities (if any) as were registered in the name of Arnold Schueren or as held in street name for his account by First Securities, together with the value of such of Schueren's securities as could not be accounted for.

As executor, Union Bank has recovered securities of the value of approximately $98,000. Subsequent investigation revealed that no other securities belonging to Schueren were in existence at the time of his death. What was originally believed to be assets having a "market value" is now merely a claim against an insolvent, bankrupt company and/or against a decedent's estate. Union Bank pursued the claim of its testator in the Chicago proceedings and was successful in obtaining a judgment requiring the receiver to allow the claim as a valid claim against First Securities. The executor is chargeable by law with only those assets which are in existence on the date of the decedent's death. Since the stolen securities were nonexistent at Schueren's death, the "asset" is the claim against First Securities and/or Nay for their value.

Proceedings for the administration of Nay's (insolvent) estate have understandably not been commenced. Union Bank followed the only fruitful course available under the circumstances by filing a claim against First Securities for the value of the stolen securities. The value of that claim (as distinguished from the value of

the converted securities) depends upon its collectability and this has not as yet been determined. It will not be determined until the receivership proceedings have been terminated and the amount of money available for distribution to receivership creditors has been ascertained.

The evidence is clear that except for the securities registered in the name of Arnold Schueren, none of the missing securities was in existence on the date Arnold Schueren died and that Nay's representations to the contrary, made to Union Bank during the period following Schueren's death and until Nay's suicide, were false and fraudulent. It is admitted that Arnold Schueren believed until the day he died that the securities contained on the Nay list were held in some form for his account by First Securities and Nay.

The instant action was commenced in June 1969, more than one year after Nay's suicide. Appellant alleges the securities set forth on the Nay list were in existence and were assets of the estate; that they were lost and the loss was due to negligence on the part of Union Bank. The defense of Union Bank is based upon the known facts that the securities did not exist and that the only asset of the estate was a claim, the value of which was unknown. There is no inconsistency as contended by appellant. It is the duty of the executor to collect all collectible assets owned by the decedent. The Union Bank has pursued this duty.

Appellant's theory in this action seems to be that because Arnold Schueren was the victim of the fraudulent, deceitful and unlawful conduct of Nay, and Union Bank did not promptly discover that fact, it, as executor, succeeds to Arnold Schueren's position and must suffer the loss. Under Montana law it is clear that an executor is chargeable with only such assets as are in existence on the date of the testator's death. In re Dolenty's Estate, 53 Mont. 33, 161 P. 524; Section 91-3402, R.C.M. 1947. In this estate, the "asset" in question is the claim that existed at the testator's death for the value of securities stolen from him during his lifetime.

For the foregoing reason alone, the trial court might well have granted the motion for a directed verdict; that is, no loss was shown as a result of the executor's action.

The foregoing discussion answers appellant's contentions (1), (3), and (4), heretofore set forth. As to contention (2), the admissibility of the death statement or suicide note, even without it there is sufficient proof to warrant the conclusion that the securities involved did not exist. As to the note, one Roy Campbell, the office manager, cashier, secretary and director of First Securities, testified by deposition. The note was read in its entirety by Campbell without objection and this would constitute a waiver. Moreover, the note was properly admissible as a declaration against interest and a business record. Section 93-1101-17(1), R.C.M. 1947; MacDonald v. Protestant Episcopal Church, 150 Mont. 332, 435 P.2d 369; Section 93-801-2, R.C.M. 1947. The note was proven as to authenticity and was clearly relevant. No error was committed.

As to appellant's contention (5), errors concerning instructions given and refused, we have examined them and find no error. First, as we have said heretofore, there was a failure of proof of any loss occasioned by the executor and the trial court might well have granted a directed verdict. Thus no error in instructions occurred. Second, appellant's contentions on admissibility of evidence not having merit, heretofore discussed, many of the claimed errors in instructions are not applicable.

We have dwelled herein largely on the matter of whether any loss was occasioned by the actions of the executor Union Bank. Appellant's contention (6) is that Union Bank, as executor, was negligent in allowing Nay to perform duties in marshalling the assets of the estate during the period of over one year. Further, that Union Bank failed to file an inventory and appraisement of the estate for over two years. We do not herein approve of the actions of Union Bank, since it could have and should have gone to the court for an extension of time, but the jury did not find those actions to be negligence.

Appellant urges that when Union Bank allowed Nay to perform its duties of marshalling the assets, it, the Bank, became a guarantor for the acts of Nay as its agent. We recognize that such is the rule in a proper case, if that delegation of authority results in a loss. But, we emphasize again, there must be proof of a loss.

Appellant also urges that the actions of Union Bank and its inaction, failure to file the inventory, raised an equitable estoppel against the Bank. That is, that the Bank is estopped from denying the amount of assets asserted in its petition for appointment. The equitable estoppel principle simply is not applicable.

It is regrettable that Leston Nay was so successful in gaining and keeping the trust and confidence of Arnold Schueren. Nay, a super conman, a liar and a thief, reached the ultimate depths of depravity when he murdered his invalid wife and then committed suicide. He obviously could not face the disgrace he knew he would suffer. The economic loss suffered by the Schuerens cannot be attributed to any negligence of Union Bank, but must be placed squarely on the shoulders of Leston Nay.

The jury, after hearing the evidence, found in favor of respondent Union Bank and Trust Company. The verdict is upheld and the judgment affirmed.

_Wesley Castles_
Associate Justice

We Concur:

_James T. Harrison_
Chief Justice

_Frank I. Haswell_

_Gene B. Daly_

_John Conway Harrison_
Associate Justices.