## WRENN *v.* VINCENT ET VINCENT OF LANGLEY, INC.

[No. 314, September Term, 1963.]

*Decided July 3, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Abraham Chasanow,* with whom were *Howard S. Chasanow* and *Chasanow & Chasanow* on the brief, for the appellant.

*Jacob S. Levin* for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal by the plaintiff from a judgment of the Circuit Court for Prince George's County entered on the defendant's motion for judgment n.o.v. in a suit for damages based on injuries sustained by the plaintiff while having her hair bleached and dyed at one of the defendant's beauty parlors. The jury had returned a verdict for the plaintiff for $1,000.-00 damages.

The declaration filed by the plaintiff asserted that the plaintiff suffered injuries "[a]s a result of the negligence of Defendant's agents * * * in failing to take proper preventive and precautionary measures before stripping and bleaching Plaintiff's hair and in the process of stripping and bleaching Plaintiff's hair and in the use of chemicals and appliances in connection therewith."

468

The evidence showed that on April 14, 1961, the plaintiff (on recommendation of one of her neighbors) went to the defendant's beauty parlor to have her hair bleached and dyed. She testified that she had previously dyed her hair at home (for nine or ten years) but had never gone to a beauty parlor to have it dyed. She testified that she had used a preparation known as Miss (or Lady) Clairol, and that she had merely dyed her hair without stripping or bleaching it to remove dye previously applied.

At the beauty shop an operator applied a preparation to bleach or strip her hair. The plaintiff testified that she complained to her operator and to another operator of a burning sensation during the twenty minutes before the bleach was rinsed and that the operators told her that this was normal. The operator had not warned the plaintiff in advance that there would be discomfort. After the hair was rinsed and dried, the operator observed that not all the color had been removed and applied the bleach to some spots on it '(without applying it to the roots). The hair was then again rinsed and dried. A dye or "toner" preparation known as Loreal was then applied. According to the plaintiff, the operator told her that this preparation was something new and that it was very good; according to the operator, it was old. This substance was applied to the roots of the hair. The plaintiff complained that it caused her scalp to burn even more severely than the bleach and that by the time her hair was dried and she left the beauty parlor her scalp was almost numb. She testified that during the course of the treatment she complained to the operator on three or four occasions about the pain without result.

Subsequently, running sores appeared on the plaintiff's head. She telephoned the defendant that evening and was told that this was a normal phenomenon and that they could not examine her scalp because it was closing time that evening. The plaintiff then went to a doctor who treated the sores. On the next day she went to the shop where her hair had been dressed and the manager informed her that her experience was a normal one. On the next Monday, she went to the main office of Vincent et Vincent, where (according to her testimony) the manager offered to take care of her expenses, lost earnings, and

medical bills. The manager also assertedly asked her whether the operator had given her a patch test on her hair, but did not comment upon her negative answer.

The operator who bleached and dyed the plaintiff's hair testified that it was evident that the plaintiff had previously dyed her own hair using a one-process hair wash, and had not bleached or stripped it. She testified that she used a Clairol preparation to bleach or strip the plaintiff's hair. She also said that in order to restore the hair to an even color she bleached the roots, that the plaintiff had complained of pain when she dyed the hair with Loreal, but that she warned the plaintiff that sores might result from application of the preparation, and that she herself had had sores. She did not, however, recall whether this warning was given before or after the application of the preparation. The force of her testimony as to the warning was further impaired by her equivocal answers on cross-examination.

The operator also testified that she usually gave a patch test to most people who come in to have their hair bleached, but did not give the plaintiff one since she had previously bleached her own hair. She testified that she felt a patch test was unnecessary since the bleach or stripping agent used was a Clairol product like that previously used by the plaintiff,[1] though she conceded that no patch test was given for the dye or toner, Loreal, which the plaintiff had not used previously. Likewise, the witness acknowledged that she had not told the plaintiff about the patch test so she could decide if she needed it or not.

Though the plaintiff's opening statement indicated that she would rely on the doctrine of *res ipsa loquitur,* the case was not so submitted to the jury. The court's instructions submitted it simply as a case of negligence, with the burden, of course, resting on the plaintiff to prove it. The motion for judgment n.o.v. was granted on the trial court's view that there was no legally sufficient evidence to show it. In holding as a matter of law that the plaintiff had failed to sustain the burden of showing negligence, the court took the view that she was un-

---

1. It it not clear that these products were the same.

der an obligation to establish at least one of three things: (1) that the substances applied were in some way defective when examined by chemical analysis; (2) that the treatment deviated from standard procedure in terms of the skill of the operator, or the heat applied, or the length of treatment; or (3) that standard procedure required that a patch test be given and that a test would in fact have revealed the harmful characteristics of the substances applied or the plaintiff's allergy to them.

We think that the court was in error in its holding that there was not sufficient evidence of negligence to go to the jury. The operator had testified that it was usual practice for a patch test to be given when a preparation was first used on a new customer and this conclusion was supported by the plaintiff's testimony as to the question asked her by the manager of the main office of the defendant.[2] See *Goldwater's, Inc. v. Medar*, 82 Ariz. 344, 313 P. 2d 410; *Bethancourt v. Employer's Liability Co.*, (La. App.) 153 So. 2d 921 (failure to test hair before applying a permanent wave). Cf. *Pinto v. Clairol, Inc.*, (C.A.,6) 324 F. 2d 608 (contributory negligence of plaintiff in failing to make skin test, despite warning on label, before using hair dye); *Jiggetts v. Figueroa*, 21 Misc. 2d 280, 199 N.Y.S. 2d 789 (rather similar to *Pinto v. Clairol, Inc.*, just cited). The trial court in its opinion seems to have taken the view that the plaintiff's previous use of a Clairol preparation exonerated the defendant from a legal duty to make the test. We think the question was one for the jury, particularly in view of the fact that no patch test was made to test the plaintiff's allergy to the

2. The plaintiff does not suggest that there was any duty to give such a test derived from statute. We may note that Code, 1963 Supp. Art. 43, § 548, empowers the State Board of Cosmetologists to "prescribe such sanitary and safety rules as it may deem necessary, with particular reference to the precautions necessary to be employed to prevent the creating and spreading of infectious and contagious diseases," and that Code 1957, Art. 43, § 544, gives the Board power to "prescribe reasonable rules * * * generally for the conduct of persons * * * affected by this subtitle." We may take judicial notice that no rules under this provision (or its statutory precursors) have been filed with the Clerk of the Court of Appeals pursuant to Code, 1957, Art. 41, §§ 9 and 246.

dye or toner Loreal, a preparation which the plaintiff had concededly not used previously. The jury could reasonably have found that the defendant, both by reason of failure to give a patch test and by reason of the failure of the operator to heed the plaintiff's complaints about pain, had failed to meet its duty of care.

We think that the evidence was ample to sustain a finding by the jury that the treatment received by the plaintiff from the defendant was the actual cause of the chemical burns suffered by the plaintiff. Whether the defendant is responsible for these injuries depends upon whether it was negligent. The trial court in granting the motion for judgment n.o.v. laid a good deal of emphasis on the plaintiff's failure to have a patch test made after the occurrence in order to show that the defendant should have given her one before it. We do not think this of any great significance in the present case. It does not show the defendant's freedom from negligence in the face of the above evidence indicating that the giving of a patch test was a standard practice, and in the face of the plaintiff's repeated complaints of pain.

We think that the evidence was sufficient to permit the jury to find that the defendant fell below the usual standard of care by failing to give a patch test and by failing to heed complaints of pain, and that it was sufficient to sustain such a finding without reference to the doctrine of *res ipsa loquitur*. We have elsewhere noted "[t]he close resemblance or relationship which may exist between what may be classified as *res ipsa loquitur* cases and cases in which a direct inference of the defendant's negligence may be drawn from particular facts." *Nalee, Inc. v. Jacobs,* 228 Md. 525, 531, 180 A. 2d 677. This case is of the latter type. The showing that the hairdresser failed to comply with usual practice, distinguishes this case from *Smith v. Bernfeld,* 226 Md. 400, 174 A. 2d 53, which also involved a suit against a hairdresser, but a wholly different type of injury (a chair tipping over). There a showing that the defendant complied with trade standards by using a standard chair precluded a finding that the defendant was liable for negligence for injuries sustained when the chair fell over.

In the light of our conclusion as to evidence of negligence, and in view of the nature of instructions given, we need not de-

cide whether the occurrence of blisters and loss of hair immediately following a visit to a hairdresser would afford ground for recovery or shift the burden of going forward with proof on a theory of *res ipsa loquitur,* in a case where evidence of negligence was not introduced.

Since the trial judge, notwithstanding his doubt as to whether the defendant's motion for a directed verdict should be granted, wisely submitted the case to the jury, there is no need for a new trial. In accordance with our view that there was sufficient evidence of negligence to take the case to the jury the judgment n.o.v. is reversed, the verdict of the jury in favor of the appellant in the amount of $1,000.00 is reinstated, and is entered for that amount, together with interest and costs.

*Judgment reversed, and the verdict of the jury and judgment in accordance therewith for $1,000.00, together with interest and costs, entered for the appellant; the costs to be paid by the appellee.*