638 A.2d 762

**DOVER ELEVATOR COMPANY**

v.

**David SWANN.**

**No. 58, Sept. Term, 1993.**

Court of Appeals of Maryland.

March 25, 1994.

John A. Rego. (Francis X. Quinn, Anderson & Quinn, on brief), Rockville, for petitioner.

Alan L. Fishbein (Fishbein & Fishbein, P.A., on brief), Ellicott City, for respondent.

Donald C. Allen (Denise Ramsburg Stanley, Allen, Johnson, Alexander & Karp, on brief), Baltimore, amicus curiae for National Elevator Industry, Inc.

Gary I. Strausberg (Randal D. Getz, M.D., J.D., Janet & Strausberg, on brief), Baltimore, amicus curiae for the Maryland Trial Lawyers' Ass'n.

Argued before RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI, ROBERT M. BELL, MARVIN H. SMITH, and CHARLES E. ORTH, Jr., Judges of the Court of Appeals (Retired and Specially Assigned), JJ.

CHASANOW, Judge.

We are called upon once again to analyze the multifarious doctrine of *res ipsa loquitur.* As Chief Judge Orth once exclaimed for the Court of Special Appeals, "[e]ver since 1863 when a barrel of flour rolled out of a warehouse window in England and injured a person passing on the public street, the thing has been attempting to speak for itself. . . ." *C & P Tel. Co. v. Hicks,* 25 Md.App. 503, 509, 337 A.2d 744, 748, *cert. denied,* 275 Md. 750 (1975). The doctrine of *res ipsa loquitur* has also been described as " 'a thing of fearful and wonderful complexity and ramifications, and the problems of its application and effect have filled the courts of all our states with a multitude of decisions, baffling and perplexing alike to students, attorneys and judges.' " *Meda v. Brown,* 318 Md. 418, 422, 569 A.2d 202, 204 (1990) (quoting William L. Prosser, *Res Ipsa Loquitur in California,* 37 Calif.L.Rev. 183, 183 (1949)).

In the case before us, we shall address the theory of *res ipsa loquitur* in the context of injuries sustained by the plaintiff, David Swann, as a result of an allegedly misleveled [1] elevator car. The two issues presented by the defendant-petitioner, Dover Elevator Company, are summarized as follows:

---

* McAuliffe, J. now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. As utilized throughout this opinion, the word "mislevel" is a term of art originally employed by the parties in this action and adopted by the Court of Special Appeals.

1. May the plaintiff, who has proffered direct evidence of the specific cause of his injuries, also rely on the doctrine of *res ipsa loquitur* in order to establish the defendant's negligence?

2. If *res ipsa loquitur* was an appropriate basis for finding the defendant negligent, did the trial judge err in failing to so instruct the jury and, if so, was that error harmless?

For the reasons stated below, we shall reverse the decision of the Court of Special Appeals. *See Swann v. Prudential Ins.*, 95 Md.App. 365, 620 A.2d 989 (1993).

## I. Facts

The plaintiff, David Swann, was injured on February 2, 1987, while attempting to board an elevator that allegedly failed to level properly with the floor. The elevator (designated "elevator number two") is in an office building located at 2277 Research Boulevard in Rockville, Maryland. The building is owned by Prudential Insurance Company of America, managed by Carey Winston Company and leased by IBM, Swann's employer and the building's sole tenant. Elevator number two was manufactured, installed and exclusively maintained by the petitioner, Dover Elevator Company. With the exception of IBM, all of the above-listed organizations were named as defendants in this action.

Upon entering elevator number two, Swann stumbled (but did not fall) and struck his back on the rear wall of the elevator car. The elevator was allegedly "[s]omewhere around a foot" or "[s]omewhat greater than about a foot" lower than the level of the floor from which Swann entered the elevator. At the time Swann entered the elevator car, he was conversing with a coworker, Murtha Donovan, Jr. According to Donovan, Swann did not see the level of the elevator car as he entered it because the two coworkers were looking at each other as they conversed. Donovan entered the elevator car immediately after Swann without incident.

On November 21, 1988, Swann filed a complaint against Prudential Insurance Company of America and Dover Eleva-

tor Company in the Circuit Court for Montgomery County, Maryland. The complaint alleged that Swann suffered $3,000,000.00 in damages as a result of the defendants' negligence and defects in the design, manufacture, installation and maintenance of elevator number two. By an amended complaint, Swann included Carey Winston Company as a defendant in the action. The product liability claim was later dismissed as to all the defendants and a two-week jury trial on the negligence claims was held in January, 1992.

At trial, Swann offered the expert testimony of Donald Moynihan, an elevator consultant and engineer. Mr. Moynihan testified that he conducted an inspection of elevator number two and the machine room in December, 1990. He also testified that he reviewed all of Dover's available maintenance records. These records indicated service calls to correct misleveling problems with elevator number two on various dates from December, 1986 to February, 1987. Ronald Bothell was the mechanic who maintained and serviced elevator number two for Dover.

The specific negligence alleged by Moynihan's testimony was as follows: 1) Dover was negligent in filing and cleaning, as opposed to replacing, contacts 14 and 15 on elevator number two, resulting in a faulty current and the misleveling; 2) Dover was negligent by failing to spend adequate time servicing the elevator; 3) Dover's maintenance records were deficient; and 4) Dover failed to properly stock replacement parts in the elevator's machine room. Swann contends the elevator's misleveling was probably caused by an irregular current running between the number 14 and 15 contacts. The importance of this contention was explained by the Court of Special Appeals: "Although [Dover's Maintenance] Agreement specifically excludes several elevator components and associated systems, the component that Swann contends caused the misleveling, the '14 and 15 contacts', was not excluded." *Swann,* 95 Md.App. at 373, 620 A.2d at 993.

Following a trial on the merits, the jury returned a verdict in favor of all the defendants. Swann appealed to the Court of

Special Appeals, which affirmed the verdict as to Prudential and Carey Winston, but reversed the verdict as to Dover. *Swann*, 95 Md.App. at 418, 620 A.2d at 1015. Dover petitioned this Court for a writ of certiorari, which was granted on July 22, 1993 in order to address the aforementioned issues.

## II. Analysis of the *Res Ipsa Loquitur* Doctrine

*Res ipsa loquitur* is applied in negligence actions as a permissible inference that literally means "the thing speaks for itself." *Benedick v. Potts*, 88 Md. 52, 55, 40 A. 1067, 1068 (1898). *Res ipsa loquitur* is "merely a short way of saying that the circumstances attendant upon an accident are themselves of such a character as to justify a [court or] jury in inferring negligence as the cause of that accident." *Id.* The doctrine allows a plaintiff the opportunity to establish a *prima facie* case "when he could not otherwise satisfy the traditional requirements for proof of negligence." *Pahanish v. Western Trails, Inc.*, 69 Md.App. 342, 359, 517 A.2d 1122, 1130–31 (1986). The jury is thereby permitted, but not compelled, to infer a defendant's negligence without the aid of any direct evidence. Even when the doctrine applies, however, the burden of proving the defendant's negligence remains upon the plaintiff. *Munzert v. American Stores*, 232 Md. 97, 103, 192 A.2d 59, 62 (1963) (noting that a permissible inference of negligence does not shift the burden of proof to a defendant but only presents a question of fact to the jury). *See also Shirks Motor Express v. Oxenham*, 204 Md. 626, 635, 106 A.2d 46, 49 (1954) (stating that, if the trial court finds conflicting permissible inferences, the choice between them is made by the jury); *Harris v. Otis Elevator*, 92 Md.App. 49, 51–52, 606 A.2d 305, 307 (1992) (inference of negligence may arise from circumstances of the case without shifting burden of proof to defendant). Under Maryland's tort law, successful reliance on *res ipsa loquitur* requires proof of the following three components:

> " ' "1. A casualty of a sort which usually does not occur in the absence of negligence.

2. Caused by an instrumentality within the defendant's exclusive control.

3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff." ' "

*Meda,* 318 Md. at 423, 569 A.2d at 204 (quoting *Hicks,* 25 Md.App. at 516, 337 A.2d at 752, in turn quoting *Leikach v. Royal Crown,* 261 Md. 541, 547–48, 276 A.2d 81, 84 (1971)).

A plaintiff's reliance on *res ipsa loquitur* is generally necessitated, therefore, by the fact that direct evidence of negligence is either lacking or solely in the hands of the defendant. As stated by this Court in *Peterson v. Underwood,* 258 Md. 9, 19, 264 A.2d 851, 856 (1970), "relaxation of the normal rules of proof is thought to be justified because the instrumentality causing injury is in the exclusive control of the defendant, *and it is assumed he is in the best position to explain how the accident happened.*" (Emphasis added). Antithetically, numerous Maryland cases have explained that a plaintiff's "attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur.*" *Smith v. Bernfeld,* 226 Md. 400, 409, 174 A.2d 53, 57 (1961). *See also Peterson,* 258 Md. at 20, 264 A.2d at 857 (holding that *res ipsa loquitur* was unavailable because "plaintiff attempted to establish specific grounds of negligence"); *Smith v. Baltimore Transit Co.,* 214 Md. 560, 566, 136 A.2d 386, 389 (1957) (stating that, "where the plaintiff himself proves the details of the happening and, having undertaken to prove the details, he has foregone reliance on *res ipsa loquitur* ").

■ The dilemma between the doctrine of *res ipsa loquitur* and offering direct evidence of negligence is best summarized by the oft-quoted discussion in *Hickory Transfer Co. v. Nezbed,* 202 Md. 253, 96 A.2d 241 (1953):

"In this case the plaintiffs themselves proved the details of the happening, foregoing reliance on *res ipsa loquitur;* and, having undertaken to prove the details, they failed to show negligence on the part of the defendants. Indeed, they explained away the possible inference of negligence. Paradoxically, the plaintiffs proved too much and too little."

202 Md. at 263, 96 A.2d at 245. *See Blankenship v. Wagner,* 261 Md. 37, 39 & n. 2, 273 A.2d 412, 413 & n. 2 (1971); *Isen v. Phoenix Assurance Co.,* 259 Md. 564, 575, 270 A.2d 476, 481 (1970); *Roberts v. Cave,* 257 Md. 582, 588, 263 A.2d 863, 866 (1970); *Stoskin v. Prensky,* 256 Md. 707, 715, 262 A.2d 48, 52 (1970). *See also Swann,* 95 Md.App. at 393, 620 A.2d at 1003. The question presented by the instant case is, therefore, whether the plaintiff attempted to prove the "details of the happening," thereby precluding his reliance on *res ipsa loquitur.*

In addressing this question, the Court of Special Appeals preliminarily acknowledged that, " 'if there is direct evidence of negligence, and all the facts causing the injury are known and testified to by witnesses at the trial,' " there is no basis for the application of *res ipsa loquitur. Swann,* 95 Md.App. at 391, 620 A.2d at 1002 (quoting *Frenkil v. Johnson,* 175 Md. 592, 605, 3 A.2d 479, 485 (1939)). The intermediate appellate court also relied substantially on our opinion in *Blankenship v. Wagner,* including the following proposition:

> " 'If the plaintiff has circumstantial evidence which tends to show the defendant's negligence (and which is therefore *consistent* with the inference relied upon in *res ipsa loquitur* ) he should not as a matter of policy be discouraged from coming forth with it. If, however, the evidence introduced by the plaintiff or the defendant shows that everything relative to the case is known, and that the injury might have been caused by something other than defendant's negligence (thereby negating the inference normally relied upon in *res ipsa loquitur* ), then the plaintiff will not be allowed to avail himself of the doctrine. In such a case, if plaintiff's proof fails to make out a *prima facie* case of negligence then it is proper to direct a verdict for the defendant.' " (Emphasis in original and emphasis deleted).

*Swann,* 95 Md.App. at 394–95, 620 A.2d at 1003 (quoting *Blankenship,* 261 Md. at 46, 273 A.2d at 417).

Nonetheless, the Court of Special Appeals in the instant case held that "Swann's attempt to prove specific acts of

negligence did not prevent him from requesting that the jury be instructed on both negligence and *res ipsa loquitur.*" *Swann,* 95 Md.App. at 397, 620 A.2d at 1005. The intermediate appellate court determined that Swann did not purport to furnish a complete explanation of the elevator's misleveling, even in light of specific evidence regarding Dover's failure to replace contacts 14 and 15, its allegedly inadequate maintenance of elevator number two, and its allegedly deficient service records. In examining this evidence, the court declared the following:

> "Swann did not, however, purport to furnish a complete explanation of the accident. Indeed, Swann offered evidence establishing that Dover responded to reports of mislevelings on two separate occasions following the January 7th repair [when contacts 14 and 15 were filed]. There was no evidence of what, if any, corrective measures Dover took on those dates. It may well be that Dover negligently repaired the elevator on one, or both, of those occasions and such negligent act or acts caused the February 2nd misleveling incident. Further, at the close of the evidence, there was a dispute as to what caused the accident. Bothell testified that it was proper to clean, rather than replace, the 14 and 15 contacts, and that the door clutch mechanism prevents the elevator doors from opening when the elevator cab is greater than an inch or two from floor level. Therefore, 'reasonable men might [have] differ[ed] as to the effect of the evidence before the jury.'"

*Swann,* 95 Md.App. at 395–96, 620 A.2d at 1004 (quoting 1 Stuart M. Speiser, *Res Ipsa Loquitur* § 5:19, at 190 (1972)).

We find that the plaintiff's expert witness, Donald Moynihan, did purport to furnish a sufficiently complete explanation of the specific causes of elevator number two's misleveling, which would preclude plaintiff's reliance on *res ipsa loquitur.* Mr. Moynihan's trial testimony was based upon his review of all the defendant's maintenance records regarding the work done on elevator number two, in addition to his on-site inspections of the elevator and machine room. Pertinent portions of that testimony consisted of the following:

"[PLAINTIFF'S COUNSEL:] Mr. Moynihan, I would like you to look at what has been marked for identification as Plaintiff's Exhibit 47. Is this a blowup of the time and repair order and certificate of time for 1/7/87 that you are looking at?

[MOYNIHAN:] That is correct, sir.

\*     \*     \*     \*     \*     \*

[PLAINTIFF'S COUNSEL:] Now, Mr. Moynihan, can you tell from your review of this document what was being done by Mr. Bothell on that occasion; that is, January 7, 1987?

[MOYNIHAN:] Yes. On this document it reads, 'Car number 2 wasn't leveling. Cleaned 14 and 15 contacts, as it was burned closed, and replaced brushes [and] left car in service.'

[PLAINTIFF'S COUNSEL:] Okay. Is that the same car that you viewed when you were in this building in December of 1990?

[MOYNIHAN:] Yes.

\*     \*     \*     \*     \*     \*

[PLAINTIFF'S COUNSEL:] What is the significance when one of these contacts or two of these contacts burn out? What does that mean?

[MOYNIHAN:] Oh. When they are burned closed, that means that they were welded, and if they are welded, that must mean that you have developed very high heat for these contacts to be welded or ... stuck together.

\*     \*     \*     \*     \*     \*

[PLAINTIFF'S COUNSEL:] How does that affect the leveling, when something like this occurs?

[MOYNIHAN:] [The elevator] will go very fast, much faster or slower.

[PLAINTIFF'S COUNSEL:] How does that interrelate to the ability of the elevator to come flush with the floor, or a particular floor?

[MOYNIHAN:] *At times it will cause the elevator to over-shoot or at times it will cause the elevator to stall in the*

*leveling zone. So, two things can happen: It can stall or it can overshoot.*

✳        ✳        ✳        ✳        ✳        ✳

[PLAINTIFF'S COUNSEL:] Now, on this occasion, what did Mr. Bothell do with those two contacts at 14 and 15?

[MOYNIHAN:] I read his deposition. He took a file to them and filed them.

[PLAINTIFF'S COUNSEL:] In your opinion, sir, is that an appropriate method [of] work[ing] on the contacts?

[MOYNIHAN:] Absolutely not.... Terrible. It shouldn't be done. I don't know why he did it. It was wrong. These are very sensitive contacts, the resistance, and putting the file on them is just wrong.... I don't know what he was thinking of.

[PLAINTIFF'S COUNSEL:] Now, what happens if you file down one of these contacts?

[MOYNIHAN:] It will change the resistance, the whole circuit will be changed.

[PLAINTIFF'S COUNSEL:] What, in your opinion, Mr. Moynihan, to a reasonable degree of engineering probability, is the proper course of conduct when a mechanic finds burnt contacts at 14 and 15?

[MOYNIHAN:] Replace [them].

[PLAINTIFF'S COUNSEL:] Why is that?

[MOYNIHAN:] It is the only way to do [it]. First of all, you can't correct them by cleaning them when they are burned like that. They should be replaced." (Emphasis added).

The defense attempted to refute Moynihan's testimony concerning the contacts with the testimony of Ronald Bothell, Dover's technician who worked on elevator number two. Upon reviewing the repair tickets, Bothell testified that he filed and cleaned the contacts on his January 7, 1987 service call. He also testified that this was an appropriate measure under the circumstances, because polishing the contacts "takes the film off" them and produces a "full contact" or sufficient

current. During the course of his testimony, Mr. Bothell also attested to the following:

"[DEFENSE COUNSEL:] Now, when you arrived again on January 7th were these contacts welded together in any way?

[BOTHELL:] No.

[DEFENSE COUNSEL:] If they were welded together what would they be like?

[BOTHELL:] It would just be like this.

[DEFENSE COUNSEL:] And how would you get that apart? What would you have to do?

[BOTHELL:] You would have to replace them.

[DEFENSE COUNSEL:] And let me ask you this. As to what you have shown us there[,] the condition that you found and you described, would that have an effect on the operation of the elevator?

[BOTHELL:] Of course it would.

[DEFENSE COUNSEL:] And how would it affect it?

[BOTHELL:] It would affect it as you are going into the floor. Your car would come into the floor, slow down, not come to a complete stop, inch on by the floor. Then it would relevel back up until it [is] level.

\* \* \* \* \* \*

[DEFENSE COUNSEL:] Would that have an effect on levelling?

[BOTHELL:] Yes.

[DEFENSE COUNSEL:] And what effect would it have on levelling?

[BOTHELL:] Well, the car will go by the floor, it will go above it or below it I would probably say an inch and then level back up and then it will come in level, stop and open the doors.

\* \* \* \* \* \*

[DEFENSE COUNSEL:] Now, that is the condition that you corrected on January 7th in response to [the] call back of January 6th, is that correct?

[BOTHELL:] Yes, sir."

Plaintiff's counsel then cross-examined Bothell with respect to the following:

"[PLAINTIFF'S COUNSEL:] Now, you also replaced the brushes on this particular occasion, is that not correct?

[BOTHELL:] Yes, sir.

[PLAINTIFF'S COUNSEL:] And that is something that you have to check all the time?

[BOTHELL:] Yes, sir.

[PLAINTIFF'S COUNSEL:] And you also have to check these contacts because they get dirt and dust blown into them, is that not correct?

[BOTHELL:] Yes, sir.

[PLAINTIFF'S COUNSEL:] And sometimes they burn, is that not correct?

[BOTHELL:] They burn, yes, sir.

[PLAINTIFF'S COUNSEL:] And when they burn they mislevel?

[BOTHELL:] Yes.

[PLAINTIFF'S COUNSEL:] Is that not correct?

[BOTHELL:] Yes, sir.

[PLAINTIFF'S COUNSEL:] When was the time preceding January 7th, 1987 that you had last cleaned these contacts?

[BOTHELL:] I have no idea.

[PLAINTIFF'S COUNSEL:] You have no idea?

[BOTHELL:] No.

    *   *   *   *   *   *

[PLAINTIFF'S COUNSEL:] So if you had wanted to replace [the contacts] you could have?

[BOTHELL:] If [they] needed it I would have, yes."

Finally, in his closing argument, plaintiff's counsel reemphasized all the direct evidence previously offered:

"The issue still remains [that] if this device was burned or burned closed what was Dover's obligation ... on the 7th of January 1987 with respect to this elevator.

Now, as you may recall and it has been some time now, Mr. Moynihan testified that these contacts are very sensitive devices and they should not be filed. The reason is he said because it affects the electrical properties of the contact.

It is like any other electric device; if you take away the metal, even if you just file it slightly, you can affect the way the contact is made. If you do that you are going to have intermittent problems, which seems to be consistent with what happened thereafter; that is that these problems continued to occur.

Mr. Bothell said that it was his practice to take this file, insert it as he did and file this material off. That may be true, that may not be true. It is really ... your judgment call as to whether that was an appropriate conduct in light of what Mr. Moynihan said was the appropriate standard of care."

Plaintiff's counsel concluded that the contacts in question were inexpensive parts and readily available in Mr. Bothell's service truck.

As illustrated by these excerpts, Mr. Moynihan testified to the probable cause of elevator number two's misleveling. He specifically testified that contacts 14 and 15 were "burned closed," which would cause the elevator to either "overshoot" or "stall" in the leveling zone. He further rendered an opinion, "to a reasonable degree of engineering probability," that the proper and reasonable course of action when the contacts are "burned closed" is to replace them. He concluded by testifying that this course of action was not taken by Dover's elevator technician, Ronald Bothell. According to the repair records and Moynihan's expert testimony, Mr. Bothell attempted to clean the contacts by filing them and, in Moyni-

han's opinion, this was an unreasonable or "[t]errible" course of conduct.

The additional testimony offered by Ronald Bothell also addressed the "burned" contacts in an apparent attempt to refute the direct evidence offered by the plaintiff's expert witness. Finally, in his closing argument, plaintiff's counsel developed a negligence theory around the direct evidence offered throughout the trial. Hence, the jury was presented with an issue of whether cleaning rather than replacing the contacts was negligent.

In arriving at its conclusion that this direct evidence of negligence did not preclude the plaintiff's reliance on *res ipsa loquitur*, the Court of Special Appeals extensively discussed two principal cases: *Blankenship v. Wagner*, 261 Md. 37, 273 A.2d 412 (1971) and *Nalee, Inc. v. Jacobs*, 228 Md. 525, 180 A.2d 677 (1962). We find these cases distinguishable from the instant case, however, because little or no direct evidence of negligence was offered in either of them. The only evidence offered by the plaintiff in *Blankenship* was that, as he and a coworker were carrying a refrigerator up a set of stairs behind the defendant's house, one of the steps collapsed underneath the coworker's feet. 261 Md. at 39–40, 273 A.2d at 413. The plaintiff was forced to support the entire weight of the refrigerator from above to prevent it from falling on his coworker, who was caught in the broken step. In doing so, the plaintiff injured his back. 261 Md. at 40, 273 A.2d at 413. *Blankenship* is distinguishable from the instant case because the plaintiff in *Blankenship* never sought to offer even a partial explanation of why the step collapsed beneath his coworker's feet. He only sought to prove *res ipsa loquitur*'s three basic elements. This Court therefore decided that the directed verdict in favor of the defendant was inappropriate and reversible error. *Blankenship*, 261 Md. at 42, 273 A.2d at 415.

In the course of its reasoning, the *Blankenship* Court also acknowledged the following principle which guides our reasoning in the instant case:

" 'The justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident. The rule is not applied by the courts except where the facts and the demands of justice make its application essential, depending upon the facts and circumstances in each particular case.' "

261 Md. at 41, 273 A.2d at 414 (quoting *Potts v. Armour & Co.,* 183 Md. 483, 488, 39 A.2d 552, 555 (1944)). The Court recognized, however, in reference to the direct evidence standard established in *Nezbed,* that an offer of some "circumstantial evidence which tends to show the defendant's negligence" should not as a matter of policy preclude reliance on *res ipsa loquitur. Blankenship,* 261 Md. at 46, 273 A.2d at 417. *See also Nezbed,* 202 Md. at 263, 96 A.2d at 245.

The instant case also does not present a situation where " 'the principal evidence of the true cause of the accident' " was accessible only to the defendant and " 'inaccessible to the victim.' " *Blankenship,* 261 Md. at 41, 273 A.2d at 414 (quoting *Potts,* 183 Md. at 488, 39 A.2d at 555). As stated herein, the plaintiff's expert witness testified to the specific cause of the accident within a reasonable degree of engineering probability. Mr. Moynihan did not merely provide some circumstantial evidence tending to show the defendant's negligence with regard to contacts 14 and 15 and the misleveling of elevator number two. He purported to offer a complete explanation of the precise cause and how the negligence of Dover's technician contributed to that cause.

As Chief Judge Wilner observed in his *Swann* dissent:

"[Swann] marshalled evidence to show the precise cause of the misleveling—the malfunction of the contacts—and to show as well that Dover was negligent in not replacing those contacts prior to the accident. The focus of the case was on whether Dover was remiss in merely cleaning the contacts rather than replacing them."

*Swann*, 95 Md.App. at 418, 620 A.2d at 1015 (Wilner, C.J., dissenting). Obviously, therefore, the principal evidence of the apparent cause of the accident was fully available to the plaintiff. Consequently, " 'the facts and the demands of justice' " do not make the application of *res ipsa loquitur* essential under the circumstances of this particular case. *Blankenship*, 261 Md. at 41, 273 A.2d at 414 (quoting *Potts*, 183 Md. at 488, 39 A.2d at 555).

The other case relied upon by the Court of Special Appeals, *Nalee, Inc. v. Jacobs*, is equally distinguishable from the factual circumstances of the instant case. In *Nalee*, the plaintiff was injured in the defendant's hotel when a nearby bench fell over and struck him on the foot. The only arguably direct evidence offered by the plaintiff was testimony that the bench was not fastened to the floor or the wall. *Nalee*, 228 Md. at 528–29, 180 A.2d at 678–79.

As in *Blankenship*, the *Nalee* Court also recognized that direct evidence of negligence may preclude application of *res ipsa loquitur*. In the course of its analysis of this issue, the *Nalee* Court attempted to distinguish the case of *Smith v. Bernfeld*, 226 Md. 400, 174 A.2d 53 (1961), in which the plaintiff offered direct evidence of negligence and was precluded from relying on *res ipsa loquitur*. In relation to that case and the issue of direct evidence, the *Nalee* Court stated the following:

"In [*Bernfeld*,] all of the facts with regard to the actual happening of the accident had been developed, and when developed, they were held insufficient to establish negligence on the part of the defendant. It was in that context that we said . . . that 'the plaintiffs' attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur*.' "

228 Md. at 532, 180 A.2d at 680 (quoting *Bernfeld*, 226 Md. at 409, 174 A.2d at 57). The *Nalee* Court correctly concluded that, in cases where the plaintiff's evidence "did not stop at the point of showing the happening of the accident under circumstances in which negligence of the defendant was a

permissible inference," the plaintiff was properly precluded from utilizing the *res ipsa loquitur* doctrine. *Nalee*, 228 Md. at 532, 180 A.2d at 681. The Court concluded that "negligence on the part of the defendant could have properly been drawn by the jury from the evidence in this case without resort to the 'doctrine' of *res ipsa loquitur.* . . ." *Nalee*, 228 Md. at 533, 180 A.2d at 681.

This Court's reasoning in *Nalee* is equally applicable to the instant case. The plaintiff in this case did not stop at the inference of the defendant's negligence, drawn from the single misleveling of the elevator, but purported to establish more. In doing so, "all of the facts with regard to the actual happening of the accident had been developed, and when developed, they were held insufficient to establish negligence" on the part of Dover. *Nalee*, 228 Md. at 532, 180 A.2d at 680.

In the instant action, Swann's primary complaint was not that a single misleveling created an inference of negligence, but that Dover's failure to properly correct the problem after prior mislevelings constituted negligence. More particularly, Swann contended Dover was negligent by cleaning, rather than replacing, contacts 14 and 15, failing to spend adequate time servicing the elevator, keeping deficient records, and failing to stock sufficient replacement parts. This did not constitute reliance on *res ipsa loquitur*. Swann established a *prima facie* case of direct negligence based on specific and comprehensive evidence gleaned from Dover's service records and Moynihan's on-site investigations. The trial judge apparently concluded, and we agree, that a *res ipsa loquitur* instruction was not proper because the plaintiff's expert witness established that the most likely cause of the elevator's misleveling was an insufficient current running between contacts 14 and 15 and the defendant's negligence, if any, was the failure to correct the misleveling problem. In effect, the plaintiff's expert, Donald Moynihan, and the defendant's witness, Ronald Bothell, agreed that the probable cause of any possible misleveling was the contacts but they disagreed over

whether cleaning rather than replacing these contacts constituted negligence.

Thus, the reasoning of *Nalee,* like that of *Blankenship,* leads us to the conclusion that *res ipsa loquitur* should not be applied to the facts and circumstances of the case before us. *Cf. Roberts v. Cave,* 257 Md. 582, 588, 263 A.2d 863, 866 (1970) (holding that offering specific evidence as to cause removed possibility of relying on presumption of negligence). *See also Larkins v. Baltimore Transit,* 249 Md. 305, 308–10, 239 A.2d 566, 568–69 (1968) (concluding that reliance on *res ipsa loquitur* was unnecessary where violations of city ordinance and Maryland Annotated Code, which one could clearly infer were the direct and proximate causes of plaintiff's injury, constituted *prima facie* case of negligence); *Bernfeld,* 226 Md. at 409, 174 A.2d at 57 (holding *res ipsa loquitur* inapplicable where plaintiff attempted to establish specific grounds of negligence).

There is an additional reason why *res ipsa loquitur* is inapplicable to the instant case. Moynihan purported to offer an expert opinion regarding the actual and specific negligence on Dover's part which caused the accident. Consequently, this was not a case where the jury was presented with some evidence and then permitted to draw its own inference as to whether there was negligence. At the very least, Moynihan drew his own inference from the evidence he examined, and then presented that inference to the jury as part of his expert testimony. The jury was not asked to draw any inferences from circumstantial evidence presented in the plaintiff's case in chief, but to decide whether it accepted as credible the expert's testimony concerning why negligence must have been the cause of this accident.

In this respect, our opinion in *Meda v. Brown,* 318 Md. 418, 569 A.2d 202 (1990), best reflects the circumstances of this case. *See also Orkin v. Holy Cross Hospital,* 318 Md. 429, 569 A.2d 207 (1990) (companion case to *Meda v. Brown* ). In *Meda,* the plaintiff sought to establish that the defendant-anesthesiologist's negligent positioning of the plaintiff's arm during surgery permanently damaged the plaintiff's ulnar

nerve.[2] Although the jury returned a verdict in favor of the plaintiff, the trial judge granted the defendant's motion for a judgment notwithstanding the verdict based on his belief that, by relying on an inference, the plaintiff had improperly invoked the doctrine of *res ipsa loquitur*. *Meda,* 318 Md. at 420, 569 A.2d at 203. The Court of Special Appeals reversed the trial judge and directed the entry of a judgment in accordance with the jury's verdict. *See Brown v. Meda,* 74 Md.App. 331, 537 A.2d 635 (1988). The intermediate appellate court noted that "[w]hether we refer to the facts herein as *res ipsa loquitur* or as proof of negligence by circumstantial evidence the result is the same." *Brown v. Meda,* 74 Md.App. at 345 n. 2, 537 A.2d at 642 n. 2. This Court, however, made the following determination:

> "We affirm, not on the basis of the applicability of *res ipsa loquitur,* but because the testimony was sufficient to support the inferential conclusion of negligence drawn by the plaintiff's experts."

*Meda,* 318 Md. at 420, 569 A.2d at 203.

At the *Meda* trial, the plaintiff offered testimony from two medical experts, and neither witness could say precisely how

---

**2.** After her surgery, the plaintiff complained of permanent and persistent "pain, numbness, and tingling in the right hand, and particularly in the fourth and fifth fingers of that hand." *Meda v. Brown,* 318 Md. 418, 421, 569 A.2d 202, 203 (1990). The condition was diagnosed as "an injury to the ulnar nerve—a nerve that originates in the area of the shoulder and extends into the hand, providing motor and sensory functions to a part of the hand, including part of the fourth and all of the fifth fingers." *Id.*

Drs. Gary Belaga, a neurologist, and John Rybock, a neurosurgeon, both offered expert testimony on behalf of the plaintiff. *Meda,* 318 Md. at 424, 569 A.2d at 205. The testimony revealed that it was the anesthesiologist's responsibility during surgery to "administer anesthesia and periodically monitor vital signs, but also to assure that the patient was properly positioned so as to prevent the application of pressure against certain vulnerable nerves and blood vessels. According to the plaintiff's experts, this latter duty of the anesthesiologist extends not only through the operative procedure, but also into the recovery room, and, in the opinion of one expert, 'until the patient is fully recovered from anesthesia.'" *Meda,* 318 Md. at 421, 569 A.2d at 203.

the plaintiff's arm was positioned during surgery so as to cause the alleged ulnar nerve damage. *Meda*, 318 Md. at 427, 569 A.2d at 206. Nonetheless, the plaintiff's first expert, Dr. Gary Belaga, testified to his opinion that "within reasonable medical probability ... the injury to [the plaintiff's] ulnar nerve occurred in the operating room ... and that to permit that to happen was not in keeping with the standard of care required of the anesthesiologist." *Id.* The plaintiff's second expert, Dr. John Rybock, similarly concluded that "there was a deviation from the standard of care in that Dr. Meda failed to adequately protect the ulnar nerve during the procedure." *Id.*

In reaching the decision that *res ipsa loquitur* was inapplicable in *Meda*, this Court acknowledged that each doctor relied at least in part on circumstantial evidence to reach his conclusion that the defendant negligently positioned the plaintiff's arm. The Court then concluded the following:

"The closest that this case comes to reliance upon *res ipsa loquitur* is in the inferential reasoning process used by the plaintiff's experts in arriving at their conclusions that Dr. Meda was negligent. As we shall see, neither Dr. Belaga nor Dr. Rybock could testify as to the precise act of negligence that caused injury to Mrs. Brown's ulnar nerve. Each doctor, based upon his knowledge of the facts and upon his expertise, concluded that Mrs. Brown's injury was one that ordinarily would not have occurred in the absence of negligence on the part of the anesthesiologist. *This inferential reasoning has a familiar ring to it. It is a major part of the concept of* res ipsa loquitur. *It is not, however,* res ipsa loquitur. Res ipsa loquitur, *as we now utilize that concept in the law of negligence, means that in an appropriate case the jury will be permitted to infer negligence on the part of a defendant from a showing of facts surrounding the happening of the injury, unaided by expert testimony, even though those facts do not show the mechanism of the injury or the precise manner in which the defendant was negligent.*" (Emphasis added).

*Meda,* 318 Md. at 424–25, 569 A.2d at 205. Thus, *Meda* clarifies the difference between offering direct evidence of negligence, or at least circumstantial evidence of the specific cause of an injury, and reliance upon *res ipsa loquitur.*[3]

In the instant case, even if we were to accept the premise that the plaintiff's expert witness did not seek to furnish a complete explanation of this elevator's misleveling, he drew his own inferences of negligence. Moynihan derived the inferences regarding the causes of elevator number two's misleveling problems from his on-site inspection and his examination of the records presented to Swann during discovery. He then presented to the jury his expert opinion that the misleveling would not have occurred if Dover had exercised due care.

---

**3.** We recognize that the case of *B & K Rentals v. Universal Leaf Tobacco,* 324 Md. 147, 596 A.2d 640 (1991), also lends inferential support to the proposition discussed in both *Meda* and *Orkin.* In *B & K Rentals,* a fire broke out in the defendant's tobacco warehouse which destroyed equipment stored there by the plaintiff. At trial, the plaintiff offered the expert testimony of Lieutenant Klasmeier, a fire investigator, concerning the cause of the fire. *B & K Rentals,* 324 Md. at 149–50, 596 A.2d at 641. Lt. Klasmeier had investigated the fire and was also familiar with a report prepared by a fellow investigator regarding the fire. The conclusions of that report were primarily based on statements by Leonard Grimes, an employee of the defendant-warehouse owner. Grimes and fellow employee Walter Johnson were the only individuals present in the warehouse at the time of the fire, but were themselves unavailable to testify at trial. The substance of that report is as follows:

"1) Johnson and [Grimes] were the only two people working at the warehouse at the time of the fire; 2) Grimes had lit an acetylene torch for Johnson a couple of hours before the fire; 3) Johnson was using the torch to burn strings caught in the jack wheels of a wooden dolly; 4) Grimes heard a popping noise and saw smoke coming from the area where Johnson had just finished burning the string from the jack wheels; and 5) Grimes believed the cause of the fire was related to Johnson's use of the acetylene torch."

*B & K Rentals,* 324 Md. at 150, 596 A.2d at 641. The case was then submitted to the jury on a *res ipsa loquitur* instruction. *B & K Rentals,* 324 Md. at 151, 596 A.2d at 642. This Court held that, "[w]ith the admission of the [expert witnesses'] testimony and reports, B & K would have direct evidence of negligence;" therefore, *res ipsa loquitur* was inapplicable to the case. *B & K Rentals,* 324 Md. at 162, 596 A.2d at 647.

The closest this case comes to *res ipsa loquitur* is in "the inferential reasoning process used by the plaintiff's expert[ ]," Donald Moynihan. *Meda,* 318 Md. at 424, 569 A.2d at 205. It therefore only resembles a *res ipsa loquitur* case, due to the inferences drawn by the expert witness and then presented to the jury. Consequently, "it might be said that 'the thing speaks for itself,' at least in terms of what the facts say to the expert. But that may be said of inferences in general, and yet it is not *res ipsa loquitur* as we know that concept in the law of negligence." *Orkin,* 318 Md. at 431, 569 A.2d at 208. *See also Wrenn v. Vincent et Vincent,* 235 Md. 466, 471, 201 A.2d 768, 771 (1964) (noting " '[t]he close resemblance or relationship which may exist between what may be classified as *res ipsa loquitur* cases and cases in which a direct inference of the defendant's negligence may be drawn from particular facts' " (quoting *Nalee,* 228 Md. at 531, 180 A.2d at 680), and holding *res ipsa loquitur* inapplicable because this case was of the "latter type").

Thus Swann ventured beyond the mere offering of some evidence of negligence as asserted by the Court of Special Appeals. *See Swann,* 95 Md.App. at 395–96, 620 A.2d at 1004. We therefore conclude that the reasoning of *Hickory Transfer Co. v. Nezbed* is dispositive of the issue, and Swann sought to prove "too much and too little." 202 Md. at 263, 96 A.2d at 245. Swann sought to prove too much because his expert's testimony endeavored to establish the specific causes of elevator number two's misleveling, thereby precluding his reliance on *res ipsa loquitur.* On the other hand, he apparently proved too little because Moynihan's testimony failed to persuade the jury, as evidenced by the verdict in favor of all the defendants.

■ Permitting reliance on *res ipsa loquitur* in such a case is tantamount to requiring an alternative jury instruction based on the doctrine in virtually every elevator misleveling case. Such a requirement is contrary to the doctrine's underlying purpose, which is to afford a plaintiff the opportunity to present a *prima facie* case where direct evidence of the

specific cause of an accident is unavailable or solely in the hands of the defendant. *See Blankenship,* 261 Md. at 41, 273 A.2d at 414 (stating that *res ipsa loquitur* only applies when " 'the demands of justice make its application essential,' " because the " 'true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident' " (quoting *Potts,* 183 Md. at 488, 39 A.2d at 555)).

If expert testimony is used to raise an inference that the accident could not happen had there been no negligence, then it is the expert witness, not an application of the traditional *res ipsa loquitur* doctrine, that raises the inference. The expert testimony offered in these "quasi *res ipsa loquitur* cases" differs somewhat from more traditional expert testimony because, instead of testifying that a *particular act* or omission constituted a failure to exercise due care, the expert testifies to the *probability* that the injury was caused by the failure to exercise due care. *See Meda,* 318 Md. at 428, 569 A.2d at 207. The expert also testifies that the accident ordinarily would not occur unless there was a failure to exercise the appropriate degree of care. Like a *res ipsa loquitur* case, such expert testimony is offered to explain why there is a probability of negligence, which may be inferred from the circumstances of the accident, even though the expert is unable to pinpoint any particular negligent conduct. Although such testimony does not isolate the specific negligent conduct, it does allow the jury to find negligence as the result of the expert's opinion rather than by circumstantial evidence and common knowledge as in the usual *res ipsa loquitur* case.

Both *Meda* and *Orkin* are among well-established Maryland precedents which assert the proposition that application of *res ipsa loquitur* is not appropriate in a case which uses expert testimony to resolve complex issues of fact. In *Orkin,* we pointed out the difference between *res ipsa loquitur* and the same type of inference which may be drawn by an expert witness.

"[I]t is important to distinguish between: 1) the inference of negligence that may properly be drawn by an expert, but could not properly be drawn by a lay juror, and 2) the

inference of negligence that may properly be drawn by a lay juror from the facts, unaided by expert testimony. Of the first, it might be said that 'the thing speaks for itself,' at least in terms of what the facts say to the expert. But that may be said of inferences in general, and yet it is not *res ipsa loquitur* as we know that concept in the law of negligence. In the strictest sense, *res ipsa loquitur* is limited to those instances where, certain criteria having been met, the trier of fact may draw an inference of negligence from the facts alone."

318 Md. at 431, 569 A.2d at 208. The *Orkin* Court concluded the following with respect to cases where such expert testimony is required:

"Resolution of the issues of negligence and causation involved in a case of this kind necessarily requires knowledge of complicated matters.... Complex issues of the type generated by a case of this kind should not be resolved by laymen without expert assistance. *Res ipsa loquitur* does not apply under these circumstances."

318 Md. at 433, 569 A.2d at 209 (citing *Meda,* 318 Md. at 428, 569 A.2d at 206–07).

At trial in the instant case, the plaintiff's own expert witness acknowledged that elevators may experience problems absent anyone's negligence. During redirect examination, Moynihan testified that "[t]here are different things that can cause different problems. You might have a heat condition in an elevator machine room" or, "[a]t times you will blow a fuse," which also may result in problems with the elevator. Without Moynihan's opinion that the misleveling was caused by negligence, an inference that this elevator did not mislevel or experience other problems absent someone's negligence may be unjustified.[4] This is not simply a case of a barrel falling

---

4. In his dissent to *Swann,* Chief Judge Wilner of the Court of Special Appeals suggested that perhaps *res ipsa loquitur* should never be applicable in elevator misleveling cases. He stated:

"My second concern is with the notion that elevators don't mislevel absent someone's negligence.... My problem is in understanding

from the defendant's window onto some hapless pedestrian's head. As a result, the application of *res ipsa loquitur* was not appropriate.

Thus, in light of the testimony offered in this case, we believe the Court of Special Appeals erred in reversing the trial judge's conclusion that the jury could not rely on *res ipsa loquitur.* This case involved the complicated inner workings of elevator number two's machinery which were outside the scope of the average layperson's common understanding and knowledge, and expert testimony was a necessary element of the plaintiff's case. Since expert testimony was necessary to this case, Swann could not rely on *res ipsa loquitur* and was required to prove it was more probable than not that this accident was the result of negligence.

### III. Jury Instructions

The Court of Special Appeals asserted that a party is entitled to have its theory of the case presented to the jury if two conditions are present: (i) the instruction correctly states the law; and (ii) the law is applicable to the evidence before the jury. *Swann,* 95 Md.App. at 388, 620 A.2d at 1000 (citing *Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979)). Since the intermediate appellate court found the doctrine of *res ipsa loquitur* applicable to the evidence offered in the instant action, it concluded that the trial judge committed reversible error by failing to properly instruct the jury regarding the doctrine. *Swann,* 95 Md.App. at 409–10, 620 A.2d at 1011. In light of the Court of Special Appeals' decision, we feel some discussion of the *res ipsa loquitur* jury instruction is warranted although we shall reserve for another

---

the rationale for such a doctrine. Mechanical, electrical, and electronic devices fail or malfunction routinely—some more routinely than others. A speck of dust, a change in temperature, misuse, an accidental unforeseen trauma—many things can cause these devices to malfunction. To allow an inference that the malfunction is due to someone's negligence when the precise cause cannot be satisfactorily established appears to me to be unwarranted."
95 Md.App. at 419, 620 A.2d at 1015–16 (Wilner, C.J., dissenting). We do not have to reach this issue in the instant case.

day the issue of whether a trial judge may refuse to give such an instruction in a case where *res ipsa loquitur* may be applicable.

Swann cites no decision of this Court that holds it is error for a trial judge to refuse to give a *res ipsa loquitur* instruction. We recognize, however, that various other jurisdictions consider it reversible error for a trial judge to refuse to give a *res ipsa loquitur* instruction where the doctrine is clearly applicable to the evidence before the jury. *See, e.g., State Farm v. Municipality of Anchorage,* 788 P.2d 726, 730–31 (Alaska 1990) (holding judge's refusal to give *res ipsa loquitur* instruction was reversible error where doctrine was applicable and plaintiff did not purport to offer complete explanation of defendant's negligence); *Davis v. Memorial Hospital,* 58 Cal.2d 815, 26 Cal.Rptr. 633, 635, 376 P.2d 561, 563 (1962) (holding it prejudicial and reversible error for trial judge "to refuse to give the requested [*res ipsa loquitur* ] instructions"); *Terrell v. Lincoln Motel, Inc.,* 183 N.J.Super. 55, 443 A.2d 236, 238 (1982) ("The failure to charge *res ipsa* [*loquitur* ], where applicable, constitutes reversible error.").

On the other hand, several decisions of this State and from the courts of other jurisdictions hold it is error for a trial judge to instruct the jury on *res ipsa loquitur* where the doctrine is clearly *inapplicable* to the evidence before it. *See, e.g., B & K Rentals v. Universal Leaf Tobacco,* 324 Md. 147, 162, 596 A.2d 640, 647 (1991) (holding that submitting case to the jury on theory of *res ipsa loquitur* was reversible error where doctrine was inapplicable because direct evidence was presented to the jury); *Potomac Edison Co. v. Burdette,* 70 Md.App. 566, 575–76, 521 A.2d 1276, 1281 (holding it reversible error to instruct jury on *res ipsa loquitur* where doctrine was clearly inapplicable due to fact that accident may have occurred in the absence of anyone's negligence), *cert. denied,* 310 Md. 129, 527 A.2d 50 (1987). *See also Jones v. Davis,* 183 Ga.App. 401, 359 S.E.2d 187, 189 (1987) ("The law in Georgia is clear that it is error to [instruct the jury as to] the doctrine of res ipsa loquitur where, as here, the cause of the incident is subject to proof by direct evidence since it 'is a doctrine of

necessity to be applied, where otherwise appropriate, in cases where there is no evidence of consequence showing negligence on the part of the defendant.'" (Citation omitted)).

Finally, at least one state court has concluded the following with respect to cases where the applicability of the doctrine is somewhat unclear:

> "In some cases the adequacy of the proof is a close question and in those instances giving the instruction *rests within the sound discretion of the trial court.*" (Emphasis added).

*Turtenwald v. Aetna Casualty & Surety Co.*, 55 Wis.2d 659, 201 N.W.2d 1, 5–6 (1972) (citing *Fehrman v. Smirl,* 25 Wis.2d 645, 131 N.W.2d 314, 318 (1964)). *See also* 57B Am.Jur.2d, *Negligence* § 2035, at 691 (2d ed. 1989) (supporting trial judge's exercise of discretion to decide whether *res ipsa loquitur* instruction is appropriate in cases where "the adequacy of the proof is a close question"). Unlike the two lines of cases remarked upon above, *Turtenwald* obviously suggests that a trial judge should have discretion to decide whether to give a *res ipsa loquitur* instruction where the evidence before the jury does not clearly require or preclude the application of the doctrine.

In the instant case, neither party has cited, nor have we found, any Maryland case which holds that a trial judge is under a mandatory obligation to instruct the jury on the doctrine of *res ipsa loquitur* or which reverses a trial judge for the failure to give a *res ipsa loquitur* instruction. Therefore, this Court has not yet foreclosed the possibility that an exercise of discretion on the trial judge's part may be permissible, particularly in cases where *res ipsa loquitur* is questionable and the trial judge's instructions as to a general negligence theory sufficiently cover the area such that counsel may fit arguments into the instructions given.

In this respect, Maryland Rule 2–520(c) provides that a court "need not grant a requested instruction if the matter is fairly covered by instructions actually given." A number of Maryland cases also assert the proposition that specifically requested jury instructions are unnecessary where the in-

structions given adequately encompass the field of law and a party's counsel has room to argue applicable law in light of the facts of the case. *See Eagle–Picher v. Balbos*, 326 Md. 179, 233, 604 A.2d 445, 471 (1992) (holding it is not error for trial judge to refuse to give specific instruction when general one is broad enough to allow party to argue properly); *Aronstamn v. Coffey*, 259 Md. 47, 50–51, 267 A.2d 741, 742–43 (1970) (holding that trial judge is under no obligation to give requested instruction, even though it may be a correct exposition of the law, if the matter is fairly covered by general instructions actually given).

*Res ipsa loquitur* is nothing more than one manner in which a general negligence theory is asserted by the plaintiff to an action. As one commentator has noted, "[i]n its simplest form, res ipsa loquitur is merely descriptive of a negligence action in which the plaintiff offers circumstantial, rather than direct, evidence of the defendant's culpable conduct." David E. Seidelson, *Res Ipsa Loquitur—The Big Umbrella*, 25 Duq. L.Rev. 387, 387 (1987) (footnote omitted). As such, the doctrine of *res ipsa loquitur* conceivably could fall within the ambit of a general negligence theory. We are unprepared to foreclose the possibility that a jury instruction concerning negligence in general may fairly cover the area of *res ipsa loquitur*, as long as the judge does not otherwise improperly preclude counsel from making such an argument. Absent a jury instruction which improperly negates such a theory, counsel would be free to present arguments regarding the permissible inferences the jury may reasonably draw from the circumstantial evidence before it. *See Hanes v. State, Use of Lamm*, 236 Md. 28, 34, 202 A.2d 364, 366 (1964) (finding a specific *res ipsa loquitur* instruction unnecessary because it was "inferentially presented" to the jury).

There is a general rule that negligence will not be inferred from the mere occurrence of an accident. In *res ipsa loquitur* cases, however, an inference of negligence is raised by the occurrence of an accident coupled with circumstances which invoke the doctrine. *See Short v. Wells*, 249 Md. 491, 496, 240 A.2d 224, 227 (1968); *Peterson v. Underwood*, 258 Md. 9, 19,

264 A.2d 851, 856 (1970). Thus, if the jury is told, as it was in the instant case, that the mere occurrence of an accident does not raise an inference of negligence, such an instruction would seem to preclude reliance upon the inference of negligence underlying the doctrine of *res ipsa loquitur*.[5] Therefore, if the judge does have any discretion to refuse a *res ipsa loquitur* instruction in a case where the doctrine potentially

---

5. A judge improperly precludes counsel from making such an argument by not giving a *res ipsa loquitur* instruction, and also instructing the jury that it may not infer negligence from the mere occurrence of an accident in a case where *res ipsa loquitur* is clearly applicable. *See Ristaino v. Flannery*, 317 Md. 452, 465, 564 A.2d 790, 796–97 (1989) (holding it reversible error to instruct jury that it may not infer negligence from mere occurrence of an accident where *prima facie* evidence of negligence was uncontroverted). *See also Lawson v. Clawson*, 177 Md. 333, 342, 9 A.2d 755, 759 (1939) (holding trial judge's refusal to grant defendant's mere happening instruction was not error in a case justifying such an inference).

In *Pindell v. Rubenstein*, 139 Md. 567, 115 A. 859 (1921), the defendants requested and were granted just such an instruction in a case where *res ipsa loquitur* was clearly applicable. This Court held as follows:

"Since therefore, under the circumstances of this case as disclosed by the evidence upon which the plaintiff relied, an inference of negligence could have been drawn from the happening of the accident itself, in connection with such circumstances, it was error to instruct the jury to the contrary, and the defendants' [request] should not have been granted."

*Pindell*, 139 Md. at 579, 115 A. at 863. In *Ristaino v. Flannery*, this Court also stated the following reason for a similar holding:

"Indeed, in cases of the instant type it is better practice not to give any mere happening instruction [on behalf of the defendant], even with an attempted explanation.

\* \* \* \* \* \*

Here the trial judge clearly perceived the inconsistency between the mere happening and the prima facie negligence instructions, and the judge endeavored to reconcile them for the jury. That effort at reconciliation, however, underscored the conflict more than the effort harmonized it."

*Ristaino*, 317 Md. at 463–65, 564 A.2d at 796–97.

Such an instruction is conceivably improper because counsel is essentially prohibited from presenting an argument, based upon the general inferences of negligence underlying *res ipsa loquitur*, where the evidence might otherwise support such an argument. *Cf. Grier v. Rosenberg*, 213 Md. 248, 257, 131 A.2d 737, 741–42 (1957) (stating that trial judge did not err in giving such an instruction where *res ipsa loquitur* was clearly inapplicable).

applies, and if the judge relies on the parties to argue the inferences to the jury, then the judge would be prohibited from instructing the jury that negligence may not be inferred from the mere occurrence of an accident. In such a case, the latter instruction could be taken by the jury as inconsistent with the inferences argued by the parties. *See* 3 Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 80.08, at 142–43 (4th ed. 1987).[6]

Thus, if a trial judge possesses discretion to refuse to give a specific *res ipsa loquitur* instruction and decides not to give the instruction, the judge may not negate an attorney's potential arguments concerning permissible inferences where the doctrine may apply. In the instant case, the trial judge did not give a *res ipsa loquitur* instruction, however, the judge also negated the attorney's potential argument concerning the permissible inferences underlying the doctrine. The judge specifically instructed the jury that "the mere occurrence of an accident does not mean that someone was negligent." Because *res ipsa loquitur* is not applicable to the instant case,

---

**6.** A federal pattern jury instruction regarding *res ipsa loquitur* reads as follows:

"In ordinary cases, the mere fact that an accident happens does not furnish evidence that it was caused by any person's negligence, and the plaintiff must point to some negligent act or omission on the part of the defendant.

If you find, however, first, that injury to the plaintiff ... was proximately caused by *(here name the event that caused the injury)*; second, that at the time of the accident the *(instrumentality that caused the injury)* was under the exclusive control or management of defendant ..., so that the defendant had superior means for determining the cause of the accident; and third, that in the normal course of events the accident and ensuing injury would not have occurred without the negligence of the person having control and management of *(the instrumentality)*, then you may find that the accident and ensuing injury were caused by the negligence of the defendant.

I say that you may so find. You are not compelled so to find. You should consider all facts and circumstances in evidence, and also the defendant's explanation. You are reminded that the plaintiff has the burden of proving defendant's negligence by preponderance of the evidence." (Emphasis in original).

3 Edward J. Devitt et al., *Federal Jury Practice and Instructions* § 80.08, at 142–43 (4th ed. 1987).

the instruction was correct, and we need not reach the question of whether the judge properly exercised his discretion in refusing to give an instruction on that basis.

In the instant case, the plaintiff offered direct evidence that purported to render an explanation of the cause of elevator number two's misleveling. In addition, because of the complex and technical nature of the probable cause of this accident, the plaintiff used expert testimony in order to support an inference of negligence. For all of these reasons, the doctrine of *res ipsa loquitur* was inapplicable to the evidence before the jury, and the trial judge committed no error in refusing to give the requested instruction.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED, AND CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REINSTATE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY. RESPONDENT TO PAY COSTS.*