No. 81-177

IN THE SURPEME COURT OF THE STATE OF MONTANA

1981

_____

ARTHUR SAMPSON,

                    Plaintiff and Appellant,

    vs.

JAYNE SNOW,

                    Defendant and Respondent.

_____

Appeal from:  District Court of the Fourth Judicial District,
              In and for the County of Missoula.
              Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Datsopoulos, MacDonald & Lind, Missoula, Montana

    For Respondent:

        Williams Law Firm, Missoula, Montana

_____

                          Submitted on briefs: July 2, 1981

                                        Decided:

Filed: AUG 31 1981

_Thomas J. Kearney_
_____
                    Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This action involves an automobile accident tried in the District Court of the Fourth Judicial District of the State of Montana, in and for the County of Missoula. The jury delivered a special verdict for the defendant. Plaintiff-appellant filed a motion for a new trial which was denied, and this appeal results.

On July 1, 1976, appellant attempted to make a left turn from the northbound lane of Reserve Street, County of Missoula, into the westbound lane of the Wheeler Village Road. Respondent, traveling north on Reserve Street, attempted to pass appellant on the left as appellant was turning. They collided. There were no signs or road markings prohibiting a pass, and the collision occurred shortly after 10:00 a.m., on a clear day, and on a dry road.

At the time of the accident, appellant was engaged in his duties as a rural mail carrier for the United States Postal Service. He turned north onto Reserve Street after making a stop, and traveled at about thirty miles per hour behind an asphalt truck. According to his version of the accident, appellant checked his mirror and turned on his left turn indicator about 100 to 150 yards before the Wheeler Village Road intersection. He testified that he slowed down as he approached the intersection and motioned an ice cream delivery truck, which was stopped on Wheeler Village Road waiting to turn north onto Reserve Street, to enter the intersection and turn. The Wheeler Village Road is slanted so as to make a turn greater than 90 degrees. After the ice cream truck had cleared the intersection, appellant began his turn. He was moving at from five to ten

miles an hour, when he was hit on the side of his car by respondent's vehicle. The first contact occurred toward the rear of appellant's vehicle and respondent's vehicle then slid along the side of appellant's vehicle.

According to respondent, she was traveling on Reserve Street at thirty-five to forty-five miles an hour, accelerated to fifty miles an hour to pass a truck, and then returned to the northbound lane as she approached the Wheeler Village Road intersection. After that pass, she saw a car and a truck well ahead of her. She testified that she approached the vehicles at approximately forty to forty-five miles an hour and decided to pass them. She accelerated to fifty to fifty-five miles an hour and began her pass approximately 100 feet behind the appellant's vehicle, which was near the intersection. She intended to pass both appellant and the truck in front of him. Respondent testified that appellant did not signal for a left turn; that she did not see the ice cream truck turn onto Reserve Street; and that appellant was traveling between thirty and thirty-five miles an hour at the time of the impact. The visibility was clear for three miles south of the intersection according to the testimony of respondent.

There was conflict in the respondent's testimony over whether appellant turned into her or she hit appellant. Appellant argues that respondent's testimony was that he turned while safely out in front of her. Testimony also was given that when respondent got out of her vehicle, the first thing she said to appellant was, "You doff, you cut right in front of me."

Photographs of the vehicles introduced at the trial

showed the left front bumper of appellant's vehicle was pushed out, but the left front headlight was not damaged. The greatest damage to appellant's vehicle was the left front fender just in front of the left door. The photographs also show that the right front grill of respondent's vehicle was pushed in and that the greatest damage to her vehicle was on the right front fender immediately above the wheel. There were some scratches along the right side of her vehicle which was 1972 Jeep Commando.

In addition to the two parties involved in the accident, two witnesses testified about the collision. Bruce Brooks, who drove the ice cream truck, testified that appellant slowed and motioned him into Reserve Street. Brooks testified that appellant somehow indicated he was turning left, but Brooks did not recall how. He did testify, however, that in a statement to an investigator from the Postal Service who conducted an investigation several days after the accident occurred that appellant signaled.

The other witness was Frank Hazelbaker, who was driving a bread delivery truck toward the intersection at the time of the accident. He testified he did not see the collision occur because he was looking at a passenger at the time. He did hear the collision, saw the scene an instant after the collision, and at that time saw respondent's vehicle airborne. He noted that appellant's turn signal was on within five seconds after the collision. He testified, however, he did not see appellant's turn signal before the collision because respondent's vehicle was in his way.

Two issues are presented for our consideration:

1. Did the trial court err in instructing the jury that the mere fact that an accident occurred, considered alone, does not raise a legal inference of negligence?

2. Did the trial court err in refusing to set aside the verdict on the grounds that the evidence did not justify it?

The first issue concerns the giving of Instruction No. 32 over appellant's objection. This instruction reads:

"The mere fact that an accident happened, considered alone, does not give rise to legal inference that it was caused by negligence or that any party to this action was negligent or otherwise at fault."

Appellant's objection was made on the grounds the instruction is inappropriate where there is substantial evidence of negligence beyond the mere happening of an accident. The giving of this instruction can be confusing to a jury, and in the future we recommend that it not be given. We find, however, no prejudicial error necessitating reversal because the instruction was given in this case.

Appellant argues that this instruction has been expressly disapproved in cases in which res ipsa loquitur is applicable. Helmke v. Goff (1979), _____ Mont. _____, 597 P.2d 1131, 36 St.Rep. 1104, and Hunsaker v. Bozeman Deaconess Foundation (1978), _____ Mont. _____, 588 P.2d 493, 35 St.Rep. 1647. Helmke involved a single car accident in which the passenger, the plaintiff, was injured. The court instructed the jury on both ordinary negligence and res ipsa loquitur. The trial court also gave a "mere happening" instruction. This Court held that a res ipsa loquitur instruction and a "mere happening" instruction are so incompatible as to require reversal because the jury may consider itself fore-

-5-

closed from considering the evidence provided by the happening of the accident itself. Appellant argues here that the question before the Court is whether the Court's ruling in _Helmke_ should be extended to ordinary negligence cases. Respondent argues that the statement of law given in the instruction is clearly correct in an ordinary negligence case and should be allowed.

This Court has discussed the instruction, or one like it, in numerous negligence cases from at least 1915 through 1976 in a variety of factual texts. See Erickson v. Perrett (1976), 169 Mont. 167, 545 P.2d 1074; Campbell v. Bozeman Community Hotel (1972), 160 Mont. 327, 502 P.2d 1141; Fries v. Shaughnessy (1972), 159 Mont. 307, 496 P.2d 1159; Flansberg v. Montana Power Co. (1969), 154 Mont. 53, 460 P.2d 263; Negaard v. Estate of Feda (1968), 152 Mont. 47, 446 P.2d 436; MacDonald v. Protestant Episcopal Church (1967), 150 Mont. 332, 435 P.2d 369; Jackson v. William Dingwall Co. (1965), 145 Mont. 127, 399 P.2d 236; Stocking v. Johnson Flying Service (1963), 143 Mont. 61, 387 P.2d 312; Wyrick v. Hoefle (1959), 136 Mont. 172, 346 P.2d 563; State v. Bast (1944), 116 Mont. 329, 151 P.2d 1009; Baatz v. Noble (1937), 105 Mont. 59, 69 P.2d 579; Cowden v. Crippen (1936), 101 Mont. 187, 53 P.2d 98; Mellon v. Kelly (1935), 99 Mont. 10, 41 P.2d 49; Lesage v. Largey Lumber Co. (1935), 99 Mont. 372, 43 P.2d 896; Autio v. Miller (1932), 92 Mont. 150, 11 P.2d 1039; and Lyon v. Chicago, M. & St.P. Ry. Co. (1915), 50 Mont. 532, 148 P. 386.

Respondent notes that in none of these cases stating the general rule was the doctrine of _res ipsa loquitur_ applicable. It has been only recently that this Court has

had the opportunity to consider the applicability of a "mere happening" instruction in a case where the jury is also properly instructed on the doctrine of res ipsa loquitur. Hunsaker v. Bozeman Deaconess Foundation, supra. In Hunsaker, this Court considered a case involving claims of medical malpractice. The Court stated that in the context of professional malpractice, a "mere fact of an injury" instruction is proper, even where res ipsa loquitur is involved but implied that such an instruction would not be proper in an ordinary res ipsa loquitur type of case.

This implication in our Hunsaker opinion was made explicit in Helmke v. Goff, supra, where the Court considered the propriety of a "mere happening" instruction in a res ipsa loquitur case involving only simple, i.e., not professional, negligence. The Court, in a closely divided opinion, held it was not proper to give a "mere happening" instruction in a res ipsa loquitur case because there, the peculiar nature of the accident and the surrounding circumstances allow the jury to infer negligence from the happening of the accident itself. Thus, the "mere happening" instruction and those on the doctrine of res ipsa loquitur were totally incompatible.

We note that neither Hunsaker nor Helmke overrule any prior cases on on the issue of negligence. Nor do they represent a break in our longstanding traditional law that the mere happening of an accident, considered alone, does not give rise to an inference that it was caused by negligence. The cases simply recognize the obvious--that a res ipsa loquitur case is an exception to the general rule.

Appellant has stated the issue, "The question posed

by this case is whether the Court's ruling in <u>Helmke</u> should be extended to ordinary negligence cases." Our answer to that is no. Such an extension would change the law of negligence in this state in a very fundamental way. It would be unacceptable to hold that the "mere happening" instruction is a correct statement of the law applicable to the case but then hold that the jury should not be informed as to this particular rule of law.

Here the challenged instruction does not tell the jury that they could find neither driver negligent. It merely states that the jury cannot infer the negligence of either the plaintiff or the defendant from the single fact that the two collided on a highway.

In light of the facts of this case, the other jury instructions and the jury's special verdict, it is clear that the giving of the "mere happening" instruction here was not/reversible error. This is a classic passing and turning case. It is clear from the evidence that the jury was instructed that the area where the accident occurred was striped to allow passing and that no signs or markings were present to prohibit passing. By the uncontradicted evidence the roadway into which plaintiff was intending to turn was simply a private driveway, open to the public use, with neither the state nor the county having any responsibility to maintain it. Thus, it is clear that respondent had a right to pass appellant at the particular time and place and also that appellant had a right to make a left turn into the driveway.

The jury was explicitly and completely instructed on the various duties incumbent on each driver in a passing-turning situation. There were no objections to these

instructions made on appeal. In particular we note that the jury was instructed on the responsibilities of the passing driver:

> ". . . no vehicle shall be driven to the left side of the center of the roadway in overtaking and passing . . . unless . . . such overtaking or passing can be completed without interfering with the safe operation of . . . any vehicle overtaken." Instruction No. 15.

> ". . . when a vehicle is traveling at a slow rate of speed and indicates a left turn by an automatic signal 100 feet or more before turning, the driver of the following vehicle must yield the right of way to the turning vehicle." Instruction No. 16.

> "The driver of a motor vehicle is presumed to see that which he could see by looking. He will not be permitted to say that he did not see what he must have seen had he looked. The duty to keep a lookout includes a duty to see that which is in plain sight." Instruction No. 20.

> "A person operating . . . a vehicle . . . shall drive it in a careful and prudent manner . . . and he shall drive it so as not to unduly or unreasonably endanger the life, limb, property, or other rights of a person entitled to the use of the street or highway.

> "The driver of a vehicle shall drive at an appropriate reduced speed when approaching and crossing an intersection . . ." Instruction No. 10.

Here, the jury was also properly instructed in detail as to the duties of the turning driver. In addition, the jury was given all the standard instructions on negligence, violation of statutes and proximate cause. The jury was clearly and explicity instructed as to the acts and omissions of respondent that would constitute negligence. It was also instructed as to the legal meaning of negligence, and the standard by which it was to be measured.

While the evidence was in some conflict on certain

-9-

critical points--most importantly, whether appellant had activated his turn signal prior to the time of impact--there was sufficient evidence on both sides which, if believed, could justify a verdict for either party. The jury returned a special verdict in which they answered "no" to the first question asked, "Was the defendant negligent?" They found specifically that respondent was not negligent. For the reasons above given, we find no error in the giving of the instructions.

The second issue is whether the trial court erred in refusing to set aside the verdict on the grounds the evidence did not justify it.

The basic principle for this Court in viewing evidence is that "where a fact issue or issues are presented before a court sitting with a jury, and there is substantial evidence to support the jury verdict, such verdict is conclusive on appeal." Holm v. Parsons (1979), ___ Mont. ____, 588 P.2d 531, 533, 36 St.Rep. 11, 13. Here there was substantial evidence in support of the verdict. The accident occurred when appellant began turning left onto the Wheeler Village Road just as respondent was passing. The record is clear that there were no road markings or signs or anything on the roadway to prevent respondent from passing appellant where she did. There was no actual intersection between two public highways. Wheeler Village Road is actually a driveway as it is not maintained by the state or the county. All parties were within the applicable speed limits, and there was no evidence to show that either was driving unreasonably.

The one substantial conflict in the evidence was the

issue of whether appellant activated his turn signal. Respondent said that he did not. Witness Hazelbaker, the driver of the bread delivery truck, was not positive. He did not remember seeing any turn signal flashing but testified that after the accident a turn signal was on. Brooks, the driver of the ice cream truck, testified that appellant indicated he was turning, but did not testify that the turn signal was on. We find that respondent presented substantial evidence along with her own testimony which qualified the case for submission to the jury. The jury was instructed, without objection, that "the direct evidence of one witness who is entitled to full credit is sufficient for the proof of any fact in this case," and "you are not bound to decide in conformity with the declaration of any number of witnesses not producing conviction in your minds against a lesser number or against a presumption or other evidence satisfying your minds." This instruction is the law of the case, and under it the jury could believe respondent and disbelieve appellant, as it apparently did.

There being substantial evidence in the record to support the jury verdict, the judgment of the lower court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices