654 A.2d 1335

**Kevin E. KENNELLY et ux.**

v.

**Scott E. BURGESS et al.**

**No. 43, Sept. Term, 1994.**

Court of Appeals of Maryland.

March 9, 1995.

Leo Wm. Dunn, Jr. (Dunn & Emig, P.A., on brief), Green-belt, for petitioners.

David A. Levin (Daniel C. Costello, Wharton, Levin, Ehrm- antraut, Klein & Nash, P.A., on brief), Annapolis, for respon- dents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

CHASANOW, Judge.

The issue this Court must resolve in the instant case is whether, in a medical malpractice case, a jury instruction that "an unsuccessful result following medical treatment is not *evidence of* negligence" is erroneous. We must also consider whether, having given this "mere happening" type of instruc- tion, the trial court should have given an additional instruction that an expert witness may infer negligence from the negative results of a medical procedure. We hold that the instruction as given was erroneous. We further hold that, even had the first instruction been a proper "mere happening" instruction, the petitioners' requested instruction regarding an expert's permissible inference of negligence should have been given.

## I.

On April 12, 1988, petitioner, Kevin E. Kennelly, presented himself to respondent, Dr. Scott E. Burgess, an otolaryngolo- gist.[1] Mr. Kennelly complained of a persistent cough, heavy postnasal drainage, some distortion of smell and taste, and a chronic foul taste in his mouth. He further informed Dr. Burgess that four separate courses of antibiotics had failed to alleviate his symptoms. After prescribing a fifth unsuccessful course of antibiotics and reviewing a CAT scan of the area, Dr. Burgess recommended a surgical procedure known as an intranasal ethmoidectomy to relieve Kennelly's chronic sinusi- tis. This procedure involves the removal of the diseased mucous membranes from both sides of the nasal passages. The area of the nasal passages involved in this procedure is

---

1. An otolaryngologist is a specialist of the ear, nose and throat.

separated from the brain by a thin bone tissue. In performing this surgery, Dr. Burgess used the "classical method," by which, in removing the mucous membranes with forceps, the surgeon uses a head-mounted light to view the nasal cavity and relies a great deal on his sense of touch where he cannot see.[2]

The surgery was performed on May 11, 1988. After the surgery, Dr. Burgess informed Kennelly's wife, Lynette, that "all went well except that there was a lot of excess bleeding." However, Mrs. Kennelly received a phone call from the hospital early the next morning informing her that Mr. Kennelly was not recovering properly. Mrs. Kennelly was informed that a brain scan had been ordered and that Mr. Kennelly was being put in the hands of a neurosurgeon, Dr. David Tolner. Mrs. Kennelly was also informed that the pathology report done after surgery found portions of Mr. Kennelly's brain in the specimens. Describing her observations of Mr. Kennelly after surgery, Mrs. Kennelly testified:

"He was highly agitated, he had no orientation whatsoever as to where he was, he didn't know our daughter's name, he didn't know where we lived. The only person or thing that he knew was me. He didn't know the cars we drove, he didn't know that he was even operated on."

Arrangements were then made to transfer Mr. Kennelly to Johns Hopkins Hospital where he came under the care of Dr. Haring Nauta. An angiogram indicated that an artery in the cranial cavity had been injured and had formed an aneurysm.

---

**2.** The Court of Special Appeals detailed the nature of this surgical procedure:

"In this procedure, the surgeon removes the mucuous [sic] membranes of the ethmoid sinuses, via the left and right passages of the nose. The ethmoid sinuses run up to the roof of the nose, called the fovea ethmoidalis. The fovea ethmoidalis, a delicate bone tissue, is attached to the dura, the protective coating of the brain. This bone tissue, which experts who testified in the case *sub judice* characterized as 'eggshell' or 'paper' thin in its normal, healthy state, is essentially the only barrier between the ethmoid sinus cavity and the brain."

*Kennelly v. Burgess*, 99 Md.App. 171, 173–74, 636 A.2d 32, 34 (1994).

Tests also indicated a spinal fluid leakage. Dr. Nauta then performed a bifrontal craniotomy to clip the artery, remove the aneurysm, and repair the cerebral spinal fluid leak.

In performing the bifrontal craniotomy, Dr. Nauta found "two neatly nibbled defects in the bone" along the floor of the skull cavity. Dr. Nauta reported to Dr. Burgess that there had been a "definite penetration into the brain." According to Dr. Nauta, the holes observed in the skull cavity had been caused by a surgical instrument during the intranasal ethmoidectomy. As a result of this injury to the brain, Dr. Nauta believed that Mr. Kennelly had sustained permanent organic brain damage and would be unable to return to his former employment as a business executive.

Pursuant to Maryland Code (1974, 1989 Repl.Vol.), Courts and Judicial Proceedings Article, § 3–2A–04, the Kennellys filed a claim against Dr. Burgess, M.D. and his medical practice, Scott E. Burgess, P.A., with the Director of the Health Claims Arbitration Office, alleging that Dr. Burgess violated the applicable standard of care during the performance of the ethmoidectomy. On November 13, 1991, a Health Claims Arbitration Panel found in favor of Dr. Burgess. The petitioners filed a notice of rejection of the Health Claims award and brought an action to nullify the award in the Circuit Court for Anne Arundel County.

At trial, the petitioners attempted to show negligence by establishing that the surgical instrument used during the procedure, known as the Blakeslee forceps, had "penetrated through the dura and through the roof of the ethmoid and the dura into the brain and came up through the nasal passage." Dr. Nauta testified for the petitioners and stated that the defects he observed in the bone were "clearly" caused by an operating instrument. Dr. Ferdinand Rodriquez, the pathologist at North Arundel Hospital who had examined the tissue samples removed by Dr. Burgess, testified that the specimens examined contained both grey matter, from the superficial part of the brain, and white matter, from the deeper portion of the brain containing the brain fibers.

The petitioners also relied on the testimony of their expert witness, Dr. James Stankiewicz, a professor and vice-chairman of the Department of Otolaryngology—Head and Neck Surgery at Loyola University Medical Center. Dr. Stankiewicz reviewed the records from both North Arundel and Johns Hopkins hospitals, as well as the prior depositions of Dr. Burgess and the respondents' other expert witnesses. On direct examination, Dr. Stankiewicz testified as to Dr. Burgess's alleged breach of the standard of care:

"[PLAINTIFFS' COUNSEL]: And, Doctor, based on the investigations that you have made, do you have an opinion with reasonable medical probability as to whether or not Doctor Burgess met [the applicable] standards of care?

[DOCTOR STANKIEWICZ]: Yes, I do.

[PLAINTIFFS' COUNSEL]: And what is your opinion?

[DOCTOR STANKIEWICZ]: My opinion is that at the time of the surgery on Kevin Kennelly that Doctor Burgess went through the fovea ethmoidalis, cribriform plate area and entered into the brain, and this is not within the standard of care for that surgery."

Thus, the petitioners attempted to establish that Dr. Burgess breached the standard of care by penetrating into the brain with a surgical instrument as the brain rested in its normal position.

In contrast, the respondents argued that the roof separating the sinuses from the brain was very thin and could have been removed during surgery. This would permit the brain to herniate through the resulting holes in the skull cavity. The respondents asserted that this scenario would not establish a breach of the applicable standard of care. Dr. Douglas E. Mattox, testifying as an expert for Dr. Burgess, stated that the fact that complications arose did not establish negligence. He further testified:

"[DEFENSE COUNSEL]: Doctor, do you have an opinion that you can express to a reasonable degree of medical probability as to how this incident occurred?

\*     \*     \*     \*     \*     \*

[DR. MATTOX]: I believe that the bone in this area was very thin and although Dr. Burgess was following the landmarks that he had, he removed some of that bone, and then once the bone is gone, there's ... there's no protection to anything inside."

Dr. Mattox also testified that there were "two potential mechanisms" for the injury suffered by Mr. Kennelly. One can either "physically go inside the cranial cavity with the forceps" or "as the bone has been removed, the brain is allowed to ... to fall down into the sinus cavity where ... where some fragments were removed." Dr. Bruce Jafek also testified for Dr. Burgess and stated that the complications that occurred "can occur in the hands of the most skilled surgeon."

At the conclusion of testimony, the trial judge instructed the jury regarding the applicable law. The judge instructed the jury:

"A witness who has special training or experience in a given field is permitted to express opinions based on observed or assumed facts to aid you in deciding the issues in the case. In weighing the opinions of an expert, you should consider the expert's experience, training and skills, and the expert's knowledge of the subject matter about which he's expressing an opinion. You should give expert testimony the weight and value you believe it should have.

*     *     *     *     *     *

[Y]ou are to consider the word malpractice and the word negligence as synonymous in their meanings and the words may be used interchangeably. General rules of negligence apply to malpractice cases as well as to ordinary claims of negligence. Negligence is doing something that a person using ordinary care would not do, or not doing something that a person using ordinary care would do.... You are instructed that the standard of care which ... a physician is required to adhere to in the practice of his profession is only that ... of a reasonably competent physician under the same or similar circumstances.... *An unsuccessful result*

*following medical treatment is not evidence of negligence.*
Kevin and Lynette Kennelly carry the burden to prove
negligence." (Emphasis added).

Petitioners' counsel objected to the court's instruction that
an unsuccessful result is not evidence of negligence. Counsel
also objected to the court's failure to give a proposed instruc-
tion that "an expert witness, because he is an expert, can infer
negligence from the result of the medical practice." The
petitioners argued that such an instruction was required under
our decision in *Meda v. Brown*, 318 Md. 418, 569 A.2d 202
(1990), in which we held that expert witnesses could rely on
such circumstantial evidence as a bad result in medical treat-
ment in formulating their conclusions. 318 Md. at 428, 569
A.2d at 207. The court overruled each of these objections.
The jury subsequently returned a verdict in favor of the
respondents. The Kennellys appealed this decision to the
Court of Special Appeals.

The Court of Special Appeals affirmed the trial court. *See
Kennelly v. Burgess*, 99 Md.App. 171, 207, 636 A.2d 32, 50
(1994). The intermediate appellate court held that there was
no error in the trial court's instruction regarding the mere
happening of an injury and that the evidence did not support
the petitioners' requested instruction that an expert can infer
negligence from a bad result. *Kennelly*, 99 Md.App. at 205–
06, 636 A.2d at 49–50. In so holding, the court found that the
requested instruction regarding inferences made by an expert
witness was not warranted because, as distinguished from the
facts in *Meda*, in the present case, Dr. Stankiewicz did not
rely solely on an unsuccessful result in finding negligence.
The Court of Special Appeals noted that in the instant case,
Dr. Stankiewicz's opinion that negligence was present was
based on "an array of concrete medical facts. It was unneces-
sary for him to rely solely on Mr. Kennelly's concluding
injuries and resultant mental impairments following the eth-
moidectomy in order to opine Dr. Burgess committed malprac-
tice." *Kennelly*, 99 Md.App. at 198, 636 A.2d at 45. We do
not necessarily agree with the Court of Special Appeals's
interpretation of Dr. Stankiewicz's testimony.

The Court of Special Appeals also quoted from our opinion in *Lane v. Calvert*, 215 Md. 457, 138 A.2d 902 (1958), a medical malpractice case in which we held that " '[i]t is well established by the case law in this State that the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence.' " *Kennelly*, 99 Md.App. at 193, 636 A.2d at 43 (quoting *Lane*, 215 Md. at 462–63, 138 A.2d at 905). The intermediate appellate court stated that the petitioners were disputing the propriety of the instruction "provided by the trial court that contained the same language [as that in *Lane* ]." *Kennelly*, 99 Md.App. at 193, 636 A.2d at 43.[3]

---

**3.** The intermediate appellate court further held that because the inference of negligence in the present case was in dispute, a "mere happening" instruction was appropriate. *Kennelly*, 99 Md.App. at 203, 636 A.2d at 48. In so holding, the court considered the petitioners' argument that our decision in *Ristaino v. Flannery*, 317 Md. 452, 564 A.2d 790 (1989) precluded the use of such an instruction. In *Ristaino*, we considered the applicability of a "mere happening" instruction in three potential scenarios where the plaintiff introduces evidence of a primary fact and uses this fact to infer or presume negligence. We noted:
"In the first subset neither the primary fact nor the inferred or presumed fact are contradicted or reasonably controverted. There would be no issue about the defendant's negligence so that a mere happening instruction should not be granted.
There can be a second subset in which the primary facts are in dispute and, consequently, the availability of an inference or presumption of negligence is also in dispute.... If the defendant requests a mere happening instruction, it would ordinarily seem to be appropriate to grant the instruction, so long as it is made clear that it is the mere happening of the accident as described in the evidence most favorable to the defendant that does not give rise to a presumption of negligence.
\* \* \* \* \* \*
The third subset of cases is illustrated ... where the primary fact is uncontradicted and uncontroverted, and where the primary fact sufficiently supports an inference or presumption of negligence to get the plaintiff to the jury, but where the defendant sufficiently controverts the inference or presumption of negligence to generate a jury issue. Under these circumstances our cases have found error when a mere happening instruction was given, without further explanation, in conjunction with a prima facie negligence instruction."
*Ristaino*, 317 Md. at 460–62, 564 A.2d at 794–95. Thus, we held that there are two circumstances where a "mere happening" jury instruction is error and one where it is not error if properly qualified. The petitioners had argued that the present case fit into the third scenario described in *Ristaino*. The Court of Special Appeals rejected this

We granted a writ of certiorari to consider the propriety of the jury instructions given at trial.

## II.

Petitioners argue that by instructing the jury that an unsuccessful result is not evidence of negligence, the trial court "effectively withdrew from the consideration of the jury the testimony of the Petitioner's expert [Dr. Stankiewicz]." Respondents argue that because the petitioners' expert did not rely on an unsuccessful result in concluding that Dr. Burgess was negligent, the jury instruction did not preclude a consideration of Dr. Stankiewicz's testimony and was therefore proper. We find that the instruction given was an improper statement of the law and was therefore error.

In *Lane*, we stated that "the mere fact that an unsuccessful result follows medical treatment is not of itself evidence of negligence." 215 Md. at 462–63, 138 A.2d at 905. *See also Baulsir v. Sugar*, 266 Md. 390, 395, 293 A.2d 253, 255 (1972); *Johns Hopkins Hospital v. Genda*, 255 Md. 616, 625, 258 A.2d 595, 600 (1969) (citing *Bettigole v. Diener*, 210 Md. 537, 541, 124 A.2d 265, 267 (1956)). In *Lane*, we considered the claims of a patient who argued that a doctor was negligent in failing to use a dye technique early on to locate the site of a

---

argument. *Kennelly*, 99 Md.App. at 202, 636 A.2d at 47. Rather, the court found that the present case better fell in the second scenario contemplated by *Ristaino*, in which both the primary facts and the resulting inference are in dispute. The court therefore held that a "mere happening" instruction was not improper and that the instruction given fairly represented the applicable law. *Kennelly*, 99 Md.App. at 205, 636 A.2d at 49.

In their petition for writ of certiorari, however, the Kennellys eschew their previous reliance on *Ristaino*. They argue that *Ristaino* was concerned only with the inferences to be made by a jury of laymen. In contrast, the Kennellys assert, "[i]n a medical malpractice case, presumptions or inferences do not speak to laymen, but only to expert medical witnesses, so therefore, any instruction relative to presumptions and inferences would be reversible error." We also note that neither the Kennellys nor Dr. Burgess cite or rely on our holding in *Ristaino* in their briefs submitted to this Court. We therefore do not consider the Court of Special Appeals's reasoning on this issue.

pus accumulation in the abdominal cavity. We noted that it was to be presumed that the doctor acted within the requisite standard of care and that an unsuccessful result was not in itself evidence of negligence. *Lane*, 215 Md. at 462–63, 138 A.2d at 905.

In so holding, we did not intend that our language from *Lane* be used in formulating jury instructions. *See State v. Grady*, 276 Md. 178, 186, 345 A.2d 436, 440 (1975) ("it is not always appropriate to quote from appellate decisions in jury instructions since the language employed in a particular opinion may not adequately inform jurors of their responsibility"). We intended simply to clarify that an unsuccessful result is not *"of itself"* evidence of negligence. *Baulsir*, 266 Md. at 395, 293 A.2d at 255 (emphasis added). In contrast, the trial judge in the present case instructed the jury that "[a]n unsuccessful result following medical treatment is *not evidence* of negligence." Thus, contrary to the Court of Special Appeals's characterization, the petitioners' objection is not to a jury instruction containing the "same language" as *Lane*. Rather, the petitioners object to the jury instruction's apparent implication that the unsuccessful result in the present case is no evidence at all of negligence and cannot be considered. Such an implication is simply not the law.

In *Green v. Castronova*, 9 Ohio App.2d 156, 38 O.O.2d 176, 223 N.E.2d 641 (1966), the Court of Appeals of Ohio recognized the potential juror confusion when an erroneous "mere happening" instruction is given. In *Green*, the plaintiff, a pedestrian, was struck by a car driven by the defendant. The court instructed the jury that "the mere fact that an accident happened or that plaintiff received some injury is no evidence whatsoever that the defendant was negligent and no negligence may be inferred therefrom." *Green*, 223 N.E.2d at 645. In assessing the propriety of this instruction, the court stated the "well settled [principle] that no presumption or inference of negligence arises from the bare happening of an accident or from the mere fact that an injury has been sustained." *Green*, 223 N.E.2d at 646. The court recognized, however, that the instruction that was given "goes beyond saying that no pre-

sumption of negligence arises from the mere happening of an accident; it says that the mere happening of an accident is *not evidence.*" *Id.* (emphasis added). In determining the weight to be given to the occurrence of an accident, the court noted that the fact of an accident, although not giving rise to a presumption of negligence, may nonetheless be taken into consideration in assessing negligence. *Green,* 223 N.E.2d at 647. The court found that:

> "the jury was entitled to take into consideration the fact of the accident and the injury of the plaintiff for whatever inferences of the negligence of defendant such facts would indicate. We further hold that the giving of the first special charge was prejudicial error, because it would lead the jury to believe that it could not take into consideration the happening of the accident or the injury to plaintiff in determining whether defendant was negligent."

*Green,* 223 N.E.2d at 648.

██ We have held that a party has the right to have his theory of the case presented to the jury. *See Aleshire v. State,* 225 Md. 355, 370, 170 A.2d 758, 765 (1961). We have clarified, however, that this right only encompasses the presentation of theories which are proper statements of the law. *See Sergeant Co. v. Pickett,* 285 Md. 186, 194, 401 A.2d 651, 655 (1979); *Levine v. Rendler,* 272 Md. 1, 13, 320 A.2d 258, 265 (1974). As in *Green,* the trial court's instruction in the present case that an unsuccessful result was *not evidence* of negligence was an erroneous statement of the law. As given, the instruction implied that the jury should give no consideration at all to the unsuccessful medical treatment of petitioner. As such, the instruction given served to negate the potential evidentiary value of the penetration into the brain. For this reason, the instruction given was in error.

## III.

██ In holding that the "mere happening" instruction given was erroneous, we note that, even had a proper "mere happen-

ing" instruction been given,[4] that instruction would leave open the potential for juror confusion without the additional clarification that the expert witness, Dr. Stankiewicz, may use the unsuccessful result as a basis for his opinion that there was negligence. If any form of a "mere happening" instruction is to be given in a medical malpractice case requiring expert testimony, the jury should be informed that, although an unsuccessful result does not create a presumption of negligence, it still may be considered as some evidence of negligence and that an expert witness may consider it in formulating his or her opinion that there was negligence.

Even the use of a proper "mere happening" instruction can lead to confusion in the minds of jurors as to the weight to be given to the unsuccessful result in determining negligence. In *Gagosian v. Burdick's Television & Appliances*, 254 Cal. App.2d 316, 62 Cal.Rptr. 70 (1967), the Court of Appeals of California considered the use of a "mere happening" instruction in a negligence case involving a rear-end collision. The court stated:

"In truth, the 'mere happening' instruction adds nothing to instructions adequately covering negligence, proximate cause, and the essentiality of a finding of defendants' negli-

---

4. Where a trial judge may find that a "mere happening" instruction is appropriate in a medical malpractice case, one author suggested that a properly phrased "mere happening" instruction might be:

"the fact that a bad result followed the treatment which [the defendant] administered does not, in itself, require you to find that [the defendant] breached [his or her] duty to [the plaintiff]. If [the defendant] exercised the degree of care and skill that you determined was the appropriate standard of care, [the defendant] cannot be found to have breached a duty because the result that followed was not satisfactory to [the plaintiff]."

Rosalyn B. Bell, *Maryland Civil Jury Instructions and Commentary* § 37.01, at 842 (1993).

In other negligence cases, such as those allegedly involving unavoidable accidents, the following may be proper where a judge determines to give a "mere happening" instruction:

"The mere fact that an accident happened, standing alone, does not permit the jury to draw the inference that the accident was caused by anyone's negligence."

Edward J. Devitt et al., 3 *Federal Jury Practice and Instructions (Civil)* § 80.07, at 141 (4th ed. 1987).

gence to permit a verdict for plaintiff. What few encouragements the instruction has received [in California case law] have been unnecessary or in dissent. The editors of [the 'mere happening' jury instruction] have withdrawn the instruction from their approved list. We find no authority that refusal of the 'mere happening' instruction, even when requested, is reversible error. Since it but elucidates the obvious to the jury, and need not be given to meet any rule of appellate procedure, we join heartily in the recommendation of its authors for its 'decent burial.' The trial judge who strikes the 'mere happening' instruction from his instruction book and completely erases it from his memory will save some time in instruction and much in retrial after reversal." (Citations omitted).

*Gagosian,* 62 Cal.Rptr. at 73; *but see Hunsaker v. Bozeman Deaconess Foundation,* 179 Mont. 305, 588 P.2d 493, 506 (1978) (citing *Gagosian* with approval in the context of ordinary negligence cases, but holding that it was not error in a professional malpractice case to use a modified "mere fact of an injury" instruction stating that a physician is not necessarily negligent merely because his efforts are unsuccessful, he makes a mistake, or he errs in judgment).

Similarly, in *Simmons v. Monarch Mach. Tool Co., Inc.,* 413 Mass. 205, 596 N.E.2d 318 (1992), the defendant appealed the trial judge's refusal to give a "mere happening" instruction. The trial judge had instructed the jury that:

"[i]f the defendant acted with reasonable care under the circumstances, then it is not negligent and not liable to the plaintiff even though the plaintiff might have been injured."

*Simmons,* 596 N.E.2d at 324. The *Simmons* court held that the requested "mere happening" instruction would have been redundant in light of the instructions actually given and that the trial judge properly refused to give the "mere happening" instruction. *Id.*

We agree with the courts in *Gagosian* and *Simmons* that a "mere happening" instruction, even in a professional malpractice action, "elucidates the obvious" and is generally

redundant. We note that the Maryland Civil Pattern Jury Instructions (MICPEL 1994) does not contain a "mere happening" instruction,[5] a further recognition of the undesirability of such an instruction.

As Maryland Rule 2–520 makes clear, a court need not give a requested instruction, even if it may be a correct exposition of the law, "if the matter is fairly covered by instructions actually given." *See Dover Elevator Co. v. Swann,* 334 Md. 231, 258–59, 638 A.2d 762, 776 (1994) (noting that "[a] number of Maryland cases also assert the proposition that specifically requested jury instructions are unnecessary where the instructions given adequately encompass the field of law and a party's counsel has room to argue applicable law in light of the facts of the case"); *Aronstamn v. Coffey,* 259 Md. 47, 51, 267 A.2d 741, 742–43 (1970); *Aleshire,* 225 Md. at 370, 170 A.2d at 765; *Whoolery v. Hagan,* 247 Md. 699, 708, 234 A.2d 605, 610 (1967). In the instant case, proper instructions on negligence, proximate cause, and the appropriate burden of proof adequately convey the applicable law to the jury. Even the use of a correctly formulated "mere happening" instruction might have served only to confuse the jury as to the weight to be given to Mr. Kennelly's brain damage in determining negligence. This case points to the danger of using a "mere happening" instruction. *See Sampson v. Snow,* 194 Mont. 392, 632 P.2d 1122, 1124 (1981) ("[t]he giving of this ['mere happening'] instruction can be confusing to a jury, and in the future we recommend that it not be given").

We further point out that due to the potential for juror confusion arising out of a "mere happening" instruction, should a court determine to give such an instruction, it is advisable to clarify that instruction in a manner which indi-

---

**5.** Florida's Committee on Standard Jury Instructions in Civil Cases also appears to agree with the reasoning in *Gagosian v. Burdick's Television & Appliances,* 254 Cal.App.2d 316, 62 Cal.Rptr. 70 (1967), and specifically recommends against a "mere happening" instruction because "[s]uch a charge is argumentative and negative." Florida Standard Jury Instructions in Civil Cases 4.1, Cmt. 1 (1993); *see also Villar v. Pereiras,* 588 So.2d 678, 679 (Fla.Dist.Ct.App.1991).

cates to the jury the way in which an expert may use an unsuccessful result in opining that there was negligence. In the instant case, the petitioners requested and were denied an instruction to the effect that an expert, because of his particular skill and knowledge, may use the fact of an unsuccessful result in medical treatment as a basis for an opinion that the physician was negligent. Since the instruction given suggested that an unsuccessful result was not to be considered at all in determining negligence, the trial court should have given the instruction requested by the petitioners in order to explain that such a result could be used by the Kennellys' expert in formulating his expert opinion. *See Meda*, 318 Md. at 428, 569 A.2d at 207. While we advise trial judges to be cautious in ever giving a "mere happening" instruction, if the trial judge had issued a properly phrased "mere happening" instruction, the additional requested instruction would then have been advisable. As we held in *Meda*, an expert, as distinguished from a mere lay witness, may, in appropriate circumstances, rely on an unsuccessful result in concluding that a physician was negligent. *Id.; Dover Elevator*, 334 Md. at 254, 638 A.2d at 773. The Court of Special Appeals's analysis notwithstanding, the jury might properly conclude that Dr. Stankiewicz formed his opinion that there was negligence based on the unsuccessful result, *i.e.*, penetration into the brain while the brain was in its normal position, and on his belief that this penetration could not have occurred without negligence.

We therefore hold that the "mere happening" instruction given by the trial court was an erroneous statement of law that served to misrepresent the import to be given to the fact of an unsuccessful result in medical treatment. Additionally, because even a proper "mere happening" instruction is often superfluous and carries with it the potential for juror confusion, we caution against its use. Where a "mere happening" instruction is given, however, an additional instruction regarding the inference an expert witness may draw from the mere fact of an unsuccessful result may be necessary to clarify the manner in which the fact of an unsuccessful result may be used by both the expert and the jury to find negligence.

Because the trial court gave an instruction which did not properly state the law and refused to give the requested instruction regarding expert witnesses, we find that the jury instructions were erroneous.

We are unable to determine what effect these instructions had on the jury deliberations and therefore cannot find that the petitioners suffered no prejudice. *See, e.g., Warfield v. Keyser*, 119 Md. 158, 168, 86 A. 152, 156 (1912). For this reason, we reverse.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO VACATE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPONDENTS.*